1999 ND 70

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Dennis EVANS, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee,**

v.

**Brian D. Barnhardt, Defendant and Appellant.**

**Nos. 980155, 980156.**

Supreme Court of North Dakota.

April 27, 1999.

Ladd Ronald Erickson, Assistant State's Attorney, Mandan, for plaintiff and appellee.

Marvin M. Hager, Bismarck, for defendant and appellant Dennis Evans, and Wayne D. Goter, Bismarck, for defendant and appellant Brian D. Barnhardt.

KAPSNER, Justice.

[¶ 1] Dennis Evans and Brian Barnhardt appealed criminal judgments entered upon jury verdicts finding them guilty of conspiracy to deliver a controlled substance. Because of improper argument by the prosecutor, we reverse and remand for a new trial.

[¶ 2] On May 14, 1997, a confidential informant for Officer Wendlick of the Mandan Police Department was searched by police and equipped with a body transmitter. The informant then went to Christopher Tokach's home. The informant testified Tokach received a telephone call and said "they were gonna be 20 minutes" and "they were coming from Bismarck." Subsequently, there was a knock at the door and, at the direction of Tokach, the informant hid in a closet behind a curtain. Two men, later identified by the informant as Evans and Barnhardt, came into Tokach's home. The informant testified she could see the men and hear them talking, but "not the specific conversation." After the two men left, the informant came out of the closet, purchased 2.25 grams of methamphetamine from Tokach, and left. The informant gave the methamphetamine to Officer Wendlick and was searched again.

[¶ 3] Evans and Barnhardt were charged with conspiracy to deliver a controlled substance (methamphetamine) in violation of N.D.C.C. §§ 12.1–06–04 and 19–03.1–23. A jury found Evans and Barnhardt guilty, judgments were entered accordingly, and Evans and Barnhardt appealed.

[¶ 4] Evans and Barnhardt contend their convictions should be reversed because of prosecutorial misconduct in closing argument and error by the trial court in instructing the jury about identification evidence and about argument by Barnhardt's attorney. The challenges to the prosecutor's closing argument and the trial court's action relate to argument and evidence about the identity of the two men who came to Tokach's home while the confidential informant hid in a closet.

[¶ 5] On cross-examination of the confidential informant by Wayne Goter, Barnhardt's attorney, the following exchange was heard by the jury:

Q   And in fact when you went back to the police station with Wendlick and they took the wire off you and you wrote a statement, right?

A   Mm hmm.

Q   And it was because there was a deficiency in the evidence that they tried to send you back to Tokach to identify these people, is that correct?

A   Yes.

Q   Because they didn't know who you were talking about—or couldn't say?

A   Right.

Q   Right.

A   I didn't see them.

Q   I just want to clear a couple things up. Are you saying you did not see any faces of these individuals?

A   No.

Q   You didn't?

A   No.

[¶ 6] On cross-examination of the confidential informant by Ross Espeseth, Evans's

attorney, the following testimony was introduced:

Q So while you're at Tokach's, as I understand it, some other people arrive?

A Yes.

Q And it's two people that you identified in your statement that you wrote immediately after the incident as two long-hairs?

A Mm hmm.

Q So at that time, you did not know who they were? On May 14 th, 1997 when you're in the closet, you don't know who it was?

A No.

Q And you were far enough away where you could not specifically hear the words that were being said between Mr. Tokach and whoever came to visit?

A I remember hearing them talk when they came downstairs, that's when I recognized Brian's voice and then I recognized the back of Dennis but then they went in the room and then I couldn't hear anything afterwards.

Q So once again, you hear sounds but not the specific conversation?

A Right.

[¶ 7] Barnhardt's counsel said in closing argument:

Two individuals go in there but they really don't identify either one. They have a car that is registered to Mr. Evans without identifying who's actually in it and not actually telling you who might customarily drive that, who else has access to it or who doesn't. They have the photographs they present which doesn't help them identify these people. Remember, [the informant] said that and it was in there, she doesn't name who they are, just white males. They send her in days later to try to identify them or establish more evidence because they don't have this identification. That went nowhere.... They don't even know who was there. They send her in later to try to find out if they can establish that and then come to you and say we know the whole thing beyond a reasonable doubt and we should expect you to ——.

The prosecutor interrupted defense counsel's closing with the statement "I hope he knows he's opening the door for me to make comments on that." The prosecutor did not ask the court for an instruction or admonition regarding defense counsel's unsubstantiated statements suggesting that later identification efforts failed. Instead, the following colloquy occurred in the prosecutor's closing argument:

MR. ERICKSON: ... The other important distinction and I don't know quite how to handle this one. Mr. Goter testified twice—or said twice to you in closing argument that we sent the informant in there a week later to identify Barnhardt and Evans as the source and that failed. That never failed. They were identified. We have it on tape. He motioned that we couldn't provide that to the jury. I don't know how to deal with this.

MR. GOTER: Your Honor—

THE COURT: Well Mr. Goter, your comment I thought was inappropriate from the fact that there was no testimony as to that. What I'm going to do—Mr. Erickson, you're not going to continue with this argument but members of the jury, the comments that Mr. Goter made regarding efforts after the alleged drug deal to ascertain the identity of the people that were involved were not testified to and there's no evidence to that, so you're going to disregard those comments. I realize that's difficult to do but I'm going to ask you to do that. All right. Go ahead Mr. Erickson.

[¶ 8] There was no evidence to support the prosecutor's argument the defendants were identified on tape. "It is fundamental that counsel cannot rely or comment on facts not in evidence during closing argument." *U.S. v. Henry*, 2 F.3d 792, 795 (7th Cir.1993). *See also State v. Weatherspoon*, 1998 ND 148, ¶ 23, 583 N.W.2d 391; *Williston v. Hegstad*, 1997 ND 56, ¶ 8, 562 N.W.2d 91; *State v. Kaiser*, 417 N.W.2d 376, 379 (N.D.1987). Thus, the prosecutor's argument was improper, because there were no facts in evidence to support it. There was evidence, testimony by the confidential informant, supporting Barnhardt's attorney's clos-

ing argument about later efforts to identify the defendants but no testimony to suggest those efforts were unsuccessful. Thus, the trial court's statement to the jury "the comments that Mr. Goter made regarding efforts after the alleged drug deal to ascertain the identity of the people that were involved were not testified to and there's no evidence to that," was overbroad, as was the court's jury admonition to "disregard those comments."

[¶ 9] Evans and Barnhardt did not object to the prosecutor's closing argument or to the trial court's admonition to the jury to disregard Attorney Goter's comments about the identities of the two men who came to Tokach's home. When there has been no objection to a prosecutor's argument, we do not reverse unless the challenged remarks constitute obvious error affecting a defendant's substantial rights. *State v. Harmon,* 1997 ND 233, ¶ 26, 575 N.W.2d 635; *State v. Barnett,* 543 N.W.2d 774, 779 (N.D.1996). We exercise our authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered serious injustice. *State v. Olander,* 1998 ND 50, ¶ 11, 575 N.W.2d 658; *State v. McClean,* 1998 ND 21, ¶ 9, 575 N.W.2d 200. In deciding if there was obvious error, we consider the probable effect of the prosecutor's improper comments on the jury's ability to judge the evidence fairly. *State v. Weatherspoon,* 1998 ND 148, ¶ 23, 583 N.W.2d 391.

[¶ 10] The United States Supreme Court has addressed improper prosecutor comments in argument to the jury:

> [S]uch comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young,* 470 U.S. 1, 18–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). See also *Williston v. Hegstad,* 1997 ND 56, ¶ 8, 562 N.W.2d 91.

[¶ 11] "The control of closing arguments is largely within the discretion of the trial court, and we will not reverse on the ground that a prosecutor exceeded the scope of permissible closing argument unless a clear abuse of the trial court's discretion is shown." *State v. Ash,* 526 N.W.2d 473, 481 (N.D.1995). To establish a trial court abused its discretion with regard to a prosecutor's argument, a defendant must establish the argument was improper and prejudicial. *State v. Schimmel,* 409 N.W.2d 335, 342 (N.D.1987). "To be prejudicial, absent a fundamental error, improper closing argument by the state's attorney must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence." *Id.* "A state's attorney's statements of fact to the jury which are not warranted by the evidence are improper and such statements are presumed to be prejudicial unless harmless in themselves." *State v. Mehralian,* 301 N.W.2d 409, 418 (N.D.1981).

[¶ 12] Under *State v. Mehralian,* 301 N.W.2d at 418, the prosecutor's improper statements of fact not supported by the evidence "are presumed to be prejudicial unless harmless in themselves." The identity of the two men who came to Tokach's home before the confidential informant bought methamphetamine from Tokach was the central issue in the trial. "The issue of identification was hotly contested, and the unsolicited statement by the prosecutor might well have been the factor which caused the jury to find" Evans and Barnhardt guilty of conspiracy. *State v. Warren,* 230 Kan. 385, 635 P.2d 1236, 1239 (1981). The prosecutor's comments about the defendants being identified on tape, which had no evidentiary support in the record, suggested the prosecutor knew of evidence which, although not presented to the jury, supported the charges against Evans and Barnhardt. The prosecutor's improper argument "carrie[d] with it the imprimatur of the Government and may [have] induce[d] the jury to trust the Government's judgment rather than its own view of the

evidence." *United States v. Young,* 470 U.S. at 18–19, 105 S.Ct. 1038.

[¶ 13] The prejudicial effect of the prosecutor's improper argument was compounded by the trial court's action in admonishing the jury to disregard Barnhardt's attorney's comments about the identification issue, which, except for the words, "That went nowhere," were supported by evidence, and in failing to admonish the jury to disregard the prosecutor's comments about the identification issue, which were not supported by any evidence. The prosecutor's improper argument, which "carrie[d] with it the imprimatur of the Government," *United States v. Young,* 470 U.S. at 18, 105 S.Ct. 1038, coupled with the trial court's admonition, which carried with it the imprimatur of the district court, may well have induced the jury to "trust the Government's judgment rather than its own view of the evidence," *id.* at 18–19, 105 S.Ct. 1038.

[¶ 14] The State argues the prosecutor's improper jury argument was a necessary response to the jury argument made by Barnhardt's counsel. Certainly, "two improper arguments do not make for a right result." *State v. Thiel,* 411 N.W.2d 66, 71 (N.D.1987). However, courts often decline to reverse convictions in appeals challenging a prosecutor's improper remarks if the prosecutor's remarks were in response to improper remarks made by defense counsel by treating them as an invited response. *See, e.g., United States v. Young,* 470 U.S. at 11, 105 S.Ct. 1038; *State v. Jones,* 557 N.W.2d 375, 378–9 (N.D.1996). In determining if a "prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant," a reviewing court must "weigh the impact of the prosecutor's remarks" and "take into account defense counsel's opening salvo." *Young,* 470 U.S. at 12, 105 S.Ct. 1038. "[I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *Id.* at 12–13, 105 S.Ct. 1038. However, if a prosecutor refers to evidence not admitted in court, thereby crossing "over the line between the permissible and the impermissible," "[t]he question is 'whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.'" *United States v. Maddox,* 156 F.3d 1280, 1283–84 (D.C.Cir.1998). In determining if a prosecutor's improper remarks in jury argument prejudicially affected the defendant's substantial rights, so as to deprive the defendant of a fair trial, a reviewing court considers "'(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of [Defendants'] guilt; and (3) the curative actions taken by the trial court.' *United States v. Eldridge,* 984 F.2d 943, 946–47 (8th Cir.1993)." *United States v. Cannon,* 88 F.3d 1495, 1502 (8th Cir.1996).

[¶ 15] A prosecutor's "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Although only one instance of prosecutorial misconduct is at issue here, "'a single misstep' on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated." *United States v. Cannon,* 88 F.3d 1495, 1503 (8th Cir.1996). The trial court apparently intended to address the inappropriate statement of defense counsel that subsequent identification efforts "went nowhere"; the corrective instruction, however, was too broad for the offense committed. The trial court took no curative action to remedy the prosecutor's improper argument, and, in fact, compounded the prejudicial effect of the prosecutor's improper argument with its admonition to the jury. From our review of the record, weighing the impact of the prosecutor's improper remarks in light of defense counsel's opening salvo, we conclude the prosecutor's response did substantially more than right the scale. Like the court in *Cannon,* we believe "the prosecutor gave the jury an improper and convenient hook on which to hang their verdict," *id.* at 1503, and we are unable to conclude the prosecutor's improper remarks about the defendants being identified on tape were "harmless in themselves," *Mehralian,* 301 N.W.2d at 418.

[¶ 16] We conclude the prosecutor's improper argument and the trial court's admo-

nition to the jury constituted obvious error affecting Evans's and Barnhardt's right to have the jury determine their guilt or innocence on the basis of the evidence presented at trial, which requires reversal of the judgments.

[¶ 17] We decline to address other issues Evans and Barnhardt raised, because we need not consider questions, the answers to which are not necessary to the determination of an appeal, *State v. Waters*, 542 N.W.2d 742, 745 (N.D.1996), and because they are not certain to arise in a new trial, *State v. Gagnon*, 1997 ND 153, ¶ 13, 567 N.W.2d 807.

[¶ 18] We reverse the judgments and remand for a new trial.

[¶ 19] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.