2000 ND 22

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Lucas Lee STRUTZ, Defendant and Appellant.**

No. 990134.

Supreme Court of North Dakota.

Feb. 22, 2000.

Rehearing Denied March 21, 2000.

Douglas W. Nesheim, Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for defendant and appellant.

Mark Rainer Boening, Assistant State's Attorney, Fargo, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Lucas Lee Strutz appeals from a criminal judgment entered upon jury verdicts finding him guilty of seven counts of burglary. We affirm his conviction.

I.

[¶ 2] Strutz's conviction stems from several burglaries committed during the evening of December 27, 1998, and the morning of December 28, 1998, in the towns of Kindred and Leonard, North Dakota. Police found similar evidence at several of the sites—doors pried open, footprints in the snow with a partial imprint of the word "Airwalk," and tire tracks of a vehicle with four different tire tread patterns. Police took photographs of the tire treads and footprints, and Deputy Dean Wawers also measured the footprints.

[¶ 3] Strutz quickly became the sole focus of the investigation into the burglaries. Police discovered the tires of Strutz's vehicle matched the four different tire tread patterns found at the burglary sites. Strutz was on probation for a prior burglary conviction, and when his probation officer searched his home and car, she seized Airwalk tennis shoes and a pry bar. Wawers measured Strutz's foot, finding the measurements exactly matched those of the footprints at the scene. When confronted with this information, Strutz implicated his friend, Dustin Gebhardt, claiming Gebhardt asked to borrow his car that evening and could also have used his shoes. Strutz also claimed he spent that evening with his cousin, Kellin Strutz.

[¶ 4] At Strutz's trial, Deputy Wawers testified regarding the matches between Strutz's shoes and vehicle tires and the footprints and tire tracks found at the scene. Strutz testified in his own defense at the trial, again claiming Gebhardt committed the burglaries after borrowing his car and testifying Gebhardt could have worn his Airwalk tennis shoes to divert suspicion. Strutz asserted he spent the evening with his cousin Kellin driving back and forth between their hometown of Oakes, North Dakota, and Kellin's father's home in Kent, Minnesota.

[¶ 5] On May 6, 1999, the jury found Strutz guilty of seven counts of burglary. The trial court sentenced him to serve seven concurrent five-year terms of incarceration.

II.

[¶ 6] First, Strutz asserts there is insufficient evidence to support the jury's verdicts finding him guilty of burglary. He argues it is unreasonable to believe he would wear his own shoes to commit a

burglary, knowing as he did that he was suspected of committing other crimes. He also notes police never retrieved fingerprints from the scene, nor did they ever connect him to any of the stolen property. Thus, Strutz contends no rational fact finder could have found him guilty beyond a reasonable doubt. We disagree.

[¶ 7] On appeal, our review of the sufficiency of the evidence for a jury verdict is very limited. *State v. Esparza*, 1998 ND 13, ¶ 17, 575 N.W.2d 203. An appellant "challenging evidence must show the evidence, 'when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt.'" *Id.* A verdict based on circumstantial evidence carries the same presumption of correctness as a verdict based on direct evidence, and we will not disturb it on appeal unless it is unwarranted. *State v. Breding*, 526 N.W.2d 465, 469 (N.D.1995).

[¶ 8] We conclude, reviewing the evidence in the light most favorable to the verdicts, that sufficient evidence exists in the record to support the jury's finding of guilt. At the trial, witnesses testified Strutz's vehicle bore tires with four different tread patterns and that these tread patterns exactly matched those found at the burglary scenes. A witness also testified Strutz's shoes matched both the size and decorative pattern of the footprints found imprinted in the snow at those sites, and also that the same footprint appeared on the door of one of the burglarized businesses. Strutz's probation officer testified she seized a pry bar from Strutz's vehicle, and Deputy Wawers testified the size of the pry bar matched the marks on the doors of the burglarized properties. While Strutz, his cousin, and his roommate all testified supporting Strutz's alibi, other witnesses refuted their testimony regarding Strutz's whereabouts the night the burglaries were committed. The task of judging the credibility of the witnesses belongs to the jury. *State v. Carlson*, 1997 ND 7, ¶ 51, 559 N.W.2d 802. On appeal, we must assume the jury believed the evidence supporting the verdict and disbelieved any contrary evidence. *Id.* Thus, on the record before us, though no direct evidence linked Strutz to the crime, we conclude the verdicts finding Strutz guilty of burglary are supported by the evidence.

III.

[¶ 9] Strutz next urges this Court to overturn his conviction for obvious error based upon the prosecutor's repeated references to his prior conviction for burglary and his alleged involvement in other burglaries. The record reveals the prosecutor made statements referring to Strutz as a burglar in both opening statement and closing argument and also repeatedly asked questions which elicited testimony linking Strutz to burglaries other than those charged. Strutz made no objection to the statements and questions at trial. We decline to reverse the jury's verdicts.

[¶ 10] Generally, this Court will not notice an issue unless it was raised at trial. *State v. Haverluk*, 432 N.W.2d 871, 874 (N.D.1988). Under N.D.R.Crim.P. 52(b), however, "[o]bvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." We exercise our authority to notice obvious error cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. *State v. McClean*, 1998 ND 21, ¶ 9, 575 N.W.2d 200.

A.

[¶ 11] The comments and questions Strutz complains of occurred throughout his trial. In his opening statement, the prosecutor foreshadowed Deputy Wawers' testimony, stating Strutz said during his interrogation that "he was too good a burglar to make amateur mistakes like leaving

his footprints in the snow. . . ." The State called Deputy Wawers as the first witness in its case in chief, and during direct examination, Wawers testified the defendant stated during the interrogation, "he was much too good a burglar to make an amateur mistake like going into a town after a fresh snowfall and leaving tire tracks and footprints all over the place." Strutz filed no pre-trial motions to exclude this admission and made no objection to the prosecutor's statement or to Wawer's testimony.

[¶ 12] The State called Dickey County Sheriff Jim Bohannon as its second witness. During redirect examination, the prosecutor elicited that, when Strutz's vehicle was impounded, Bohannon took photographs of the car "[t]o tie up with burglaries that we were having" in Dickey County. Strutz did not object to this testimony. Moreover, during the preceding cross examination, Strutz himself had raised the issue of other burglary investigations when he asked Bohannon why the Bureau of Criminal Investigation ("BCI") was notified when sheriff's deputies impounded Strutz's car, and Bohannon had answered that a BCI agent was investigating burglaries. Strutz also touched on the same subject matter by asking Bohannon, "You've been trying to put Luke Strutz in prison for a long time, haven't you?" Bohannon's answer was, "If he was doing burglaries, yes."

[¶ 13] Finally, the State called Strutz's probation officer, Rhonda Berntson. Berntson testified on direct examination that she knew Strutz owned numerous pairs of Airwalk shoes because "[h]e was a suspect in other burglaries in Dickey County and we had also seized . . . two other pair [sic] of tennis shoes." Strutz failed to object to her testimony. Following that question, and still during the prosecutor's direct examination, Strutz engaged in a colloquy with Berntson regarding the location in Strutz's home of the tennis shoes she seized. During this line of questioning, Strutz asked Berntson, "Basically anything gets broken into you go over and seize a pair of Luke's shoes; isn't that correct, down in Dickey County?" Thus, Strutz elicited testimony on the issue of prior investigations of possible criminal conduct with this witness as well.

[¶ 14] After the State rested, Strutz testified in his own defense. On direct examination, Strutz admitted his previous conviction for burglary and that he had served 20 months in prison. He never admitted involvement in other burglaries, but acknowledged on direct examination that he had been a suspect in other burglaries. Strutz also presented his former roommate, Caleb Aberle, who testified that officers searched their residence on numerous occasions.

[¶ 15] Following the conclusion of the defense's case, the State presented several rebuttal witnesses. Among those was Dustin Gebhardt, Strutz's friend. With this witness the prosecutor engaged in the following colloquies:

Q. Now, you were actually more than just good friends with the Defendant. You actually committed crimes with the Defendant; isn't that true?

A. Yes.

Q. What kind of crimes did you commit with this Defendant?

A. We had done burglaries before.

Q. When did you do burglaries with this Defendant?

A. Beginning of the year.

Q. We are now in 1999; is that correct?

A. Yes.

Q. You did burglaries with this Defendant sometime in 1999?

A. Probably more towards the end of last year I guess.

Q. Where were these burglaries committed?

MR. JOHNSON: Objection. Relevance.

THE COURT: What's the point?

MR. BOENING: Just trying to flesh out the Defendant's relationship and the extent of the relationship for the jury, Your Honor.

MR. JOHNSON: I think the relationship has been stated. I don't see how the relationship has anything to do with what—where they were, what they were doing.

THE COURT: Sustained.

Q. (By Mr. Boening) Did you commit any burglaries with this Defendant before Christmas of last year?

MR. JOHNSON: Objection. Relevance.

THE COURT: Sustained.

. . . .

Q. (By Mr. Boening) Mr. Gebhardt, Mr. Johnson just asked you a question about burning shoes. Have you ever burned shoes?

A. I burned one pair of shoes.

Q. Why?

A. Because they were used in a burglary.

Q. What—what burglary?

A. Would have been one in Hecla.

Q. Who—who did you do that burglary with?

A. Lucas.

Q. What gave you the idea to burn your shoes after doing a burglary with the Defendant?

A. I didn't want them to take shoes tracks or whatever, shoe prints.

[¶ 16] Finally, in his closing argument and rebuttal closing argument, the prosecutor made numerous statements regarding Strutz's criminal history, referring to both his prior conviction and other uncharged burglaries. Again, Strutz did not object to these statements. The prosecutor revisited Deputy Wawers' testimony regarding Strutz's admission that he was too good a burglar to make amateur mistakes. The prosecutor also stated:

You also heard during the course of this trial that the Defendant has been a suspect apparently in other burglaries. You learned that the Defendant has himself been convicted of burglary in the past.

. . . .

Apparently the Defendant has been the suspect in a number of burglaries in the area that Special Agent Dupree works in.

. . . .

What motive would Dustin Gebhardt have to try to frame this Defendant? . . . Again, what's his motive to frame his friend? This is the person who he does burglaries with.

. . . .

[B]ut again I'm suspicious of Dustin Gebhardt's testimony. After all he is one of the Defendant's buddies. He's a burglar just like the Defendant's a burglar.

. . . .

His [Gary Strutz, Kellin Strutz's father] testimony was that he never really knew the Defendant. . . . And now his son wants to bring in his good buddy, a convicted burglar, Lucas Strutz.

**B.**

[¶ 17] We first address the prosecutor's reference to Strutz's admission

that he was "too good a burglar" to have committed a burglary in the snow and the question eliciting the deputy's testimony recounting the admission. Strutz's statement was an "admission by a party-opponent" under Rule 801(d)(2), N.D.R.Ev. Under that rule, a statement made by a particular party which is offered against that party is admissible, substantive, non-hearsay evidence. *See* N.D.R.Ev. 801, Explanatory Note. Under Rule 403, N.D.R.Ev., the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. However, Strutz did not attempt to exclude the admission from evidence either through a pre-trial motion or by objecting to the prosecutor's statement or the deputy's testimony. Under the circumstances, we conclude the prosecutor's statement and question were not improper and the trial court did not abuse its discretion in allowing the admission into evidence.

### C.

[¶ 18] We turn next to those statements made by the prosecutor which referred to Strutz's prior conviction and conclude these statements were not improper. Generally, evidence of other crimes "is not admissible to prove the character of a person in order to show action in conformity therewith," though it may be admitted for other purposes under N.D.R.Ev. 404(b). Rule 609(a), N.D.R.Ev., also limits the admissibility of criminal convictions used for impeachment purposes. "Prior conviction evidence, especially when used against a person accused of a crime, is potentially very prejudicial." *State v. McDonell,* 550 N.W.2d, 62, 65 (N.D.1996) (Maring, J., concurring specially).

[¶ 19] In this case, however, the first reference to Strutz's conviction occurred during his own direct examination testimony in his defense case. Strutz volunteered testimony relating to his prior burglary

conviction, the acts upon which the conviction was based, and his time in prison. In *United States v. Smiley,* the Eighth Circuit concluded a defendant who testified about a prior conviction during direct examination in an attempt to "remove the sting," opened himself up to questions about the conviction. 997 F.2d 475, 479–80 (8th Cir.1993). We agree with that conclusion. Strutz's volunteered testimony opened the door to statements by the prosecutor about the past conviction for burglary; the prosecutor did not act improperly by referring to the conviction once Strutz himself entered it into evidence.

### D.

[¶ 20] Finally, we address the prosecutor's statements and questions referring to burglaries other than those with which Strutz was charged. This Court will not reverse Strutz's conviction unless we conclude the questions and comments constituted obvious error affecting Strutz's substantial rights. *State v. Harmon,* 1997 ND 233, ¶ 26, 575 N.W.2d 635. In deciding whether Strutz's substantial rights were affected, we consider the entire record and determine the probable effect of the error in the light of all the evidence. *City of Fargo v. Erickson,* 1999 ND 145, ¶ 13, 598 N.W.2d 787. In order for the error to have affected Strutz's substantial rights, it must have been prejudicial or affected the outcome of the proceeding. *State v. Olander,* 1998 ND 50, ¶ 15, 575 N.W.2d 658. We conclude the prosecutor's statements and questions were improper and allowing them into evidence was error. On the record before us, however, we determine the error did not affect Strutz's substantial rights and decline to reverse Strutz's conviction.

[¶ 21] Under N.D.R.Ev. 404(b), evidence of prior bad acts or crimes is generally not admissible unless it is substantially relevant for some purpose other

than to point out the defendant's criminal character and to show the probability that he acted in conformity therewith. *State v. Osier*, 1997 ND 170, ¶ 4, 569 N.W.2d 441. The rule acknowledges the inherent prejudicial effect prior bad act evidence may have on the trier of fact. *Id.* Though, under N.D.R.Ev. 404(b), evidence of a prior bad act may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," the State put forth no legitimate explanation for the introduction of this evidence, either in its brief or in oral argument before this Court. We are especially concerned about the prosecutor's persistence in questioning Dustin Gebhardt about burglaries he may have committed with Strutz, even after the trial court sustained an objection to the same subject matter.

▮ [¶ 22] Despite our concern, we conclude an examination of the entire record and the probable effect of the error in light of all the evidence shows Strutz's substantial rights were not affected. First, as we discussed above, the prosecution presented substantial evidence linking Strutz to the burglaries. The State produced photographs of footprints matching the size and decorative pattern of Strutz's shoes, vehicle tire imprints from a car with four different tire tread patterns which matched Strutz's car, and a pry bar seized from Strutz's vehicle which matched the size of the pry marks on the doors of the burglarized establishments. Second, during the trial, Strutz himself raised the issue of other burglary investigations with two of the State's witnesses, acknowledged on direct examination in his defense case that he had been suspected of other burglaries, and presented to the jury, by extensive testimony of his former roommate, the number of searches conducted at their residence. It seems, from the trial record, Strutz intended to show the jury he had been harassed by law enforcement offi-

cials. Viewing this record as a whole, in light of the evidence of Strutz's guilt and Strutz's own use of testimony regarding other burglary investigations, we cannot conclude the admission of evidence he participated in other burglaries prejudiced Strutz or affected the outcome of the trial.

▮ [¶ 23] In addition, many of the prosecutor's statements referring to Strutz as a burglar occurred during closing argument. We have stated that control of closing arguments is in large part a matter of trial court discretion and that discretion will not be overturned on appeal unless a clear abuse is shown. *State v. Evans*, 1999 ND 70, ¶ 11, 593 N.W.2d 336. To show the trial court abused its discretion in allowing prosecutorial argument, the defendant must establish the argument was improper and prejudicial, such that it "stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence." *Id.* In determining whether a prosecutor's improper statements in closing argument prejudicially affected the defendant's rights, so as to deprive him of a fair trial, we examine: (1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence of guilt; and (3) the curative actions taken by the trial court. *Id.* at ¶ 14. We conclude the cumulative effect of the State's misconduct was not so great as to prejudice Strutz's rights, given the strength of the properly presented evidence of Strutz's guilt, which we discussed above.

## IV.

[¶ 24] Finally, Strutz argues his conviction should be overturned because of the ineffective assistance of his trial counsel. Specifically, Strutz directs our attention to his trial counsel's failure to object to the prosecutor's improper statements and his

counsel's decision to elicit prior crimes evidence during his direct examination. As to the latter, Strutz contends his counsel's references to his conviction "were unnecessary for any reasonable trial strategy and assisted the prosecution in its improper use of similar act evidence." We decline to overturn Strutz's conviction on these grounds because we conclude the record before us does not clearly show whether Strutz received ineffective assistance of counsel.

[¶ 25] The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, and N.D. Const. art. I, § 12 guarantee a defendant effective assistance of counsel. A defendant alleging ineffective assistance of counsel has a heavy burden of proving counsel's assistance was ineffective by demonstrating: (1) counsel's representation fell below an objective standard of reasonableness and (2) the defendant was prejudiced by counsel's deficient performance. *Mertz v. State*, 535 N.W.2d 834, 836 (N.D.1995). The prejudice element requires the defendant to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

[¶ 26] We have often stated a claim of ineffective assistance of trial counsel should not be brought on direct appeal, but rather through a post-conviction relief proceeding, which allows the parties to fully develop a record on the issue of counsel's performance and its impact on the defendant's case. *See, e.g., State v. Antoine*, 1997 ND 100, ¶ 9, 564 N.W.2d 637. Nevertheless, when an ineffective assistance of counsel argument is raised on direct appeal, we review the entire record to determine if assistance of counsel was plainly defective, requiring a reversal of the conviction. *State v. Norman*, 507 N.W.2d 522, 525 (N.D.1993). Unless the record affirmatively shows ineffectiveness of constitutional dimensions, the defendant must provide the court with some evidence in the record to support the claim. *McDonell*, 550 N.W.2d at 65. Some form of proof is required, and the representations and assertions of new counsel are not enough. *State v. Falcon*, 546 N.W.2d 835, 837 (N.D.1996). When the record on direct appeal is inadequate to determine whether the defendant received ineffective assistance, the defendant may pursue the ineffectiveness claim at a post-conviction proceeding where an adequate record can be made. *State v. Bengson*, 541 N.W.2d 702, 703 (N.D.1996).

[¶ 27] The record before us was developed to prove the offenses with which Strutz was charged, not for his ineffective assistance claim; therefore, we are not able to discern from the record whether trial counsel's decision to elicit testimony from Strutz about his prior conviction was truly ineffective assistance or a legitimate trial strategy. The same is true for trial counsel's failure to object to the prosecutor's improper statements and questioning regarding other uncharged burglaries. Thus, based on this record, Strutz cannot establish that his trial counsel's conduct fell below an objective standard of reasonableness or that it is reasonably probable the result of his trial would have been different but for his counsel's alleged errors. Though we conclude this record fails to show his counsel was plainly defective, Strutz may still pursue this claim in a post-conviction proceeding in which an adequate record supporting his contentions may be developed.

V.

[¶ 28] We conclude Strutz has not sufficiently shown his conviction should be reversed for insufficient evidence to support the jury verdict, obvious error, or ineffective assistance of counsel. We, therefore, affirm the jury verdicts convicting him of burglary.

[¶ 29] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.