607 N.W.2d 575 (2000)
2000 ND 46
In the Interest of S.R.A.
J.L.A., Daniel P. Richter, Director of Ward County Social Service Board, and Fred Woodiwiss as Guardian ad Litem on behalf of S.R.A., the minor child, Plaintiffs and Appellees,
v.
T.A.T., Defendant and Appellant.
No. 990187.
Supreme Court of North Dakota.
March 21, 2000.
Diane Marie Hausmann, Grand Forks Child Support Enforcement Unit, Grand Forks, for plaintiffs and appellees.
Henry H. Howe, Howe & Seaworth, Grand Forks, for defendant and appellant.
KAPSNER, Justice.
[¶ 1] T.A.T. (Terry)[1] appealed a district court judgment adjudging him the natural father of S.R.A. (Shelly) and ordering Terry to reimburse the Ward County Social Service Board for support it provided for Shelly from December 1994 through June 1997. We conclude the court properly struck Terry's answer and entered a default judgment, and we affirm.
*576 [¶ 2] Shelly was born out of wedlock to J.L.A. (Jenny) on February 25, 1994. Jenny received assistance payments under the Aid to Families with Dependent Children Program on behalf of Shelly from December 1994 through June 1997. In March 1995, the Assistant States Attorney for Ward County brought an action against Terry and another man,[2] seeking adjudication of Shelly's natural father, imposition of a child support obligation, and reimbursement for support expended on Shelly's behalf by the Ward County Social Service Board.
[¶ 3] On February 12, 1996, the district court ordered Terry to "submit to extended factor genetic tests for the purpose of genetic testing" within 30 days. After a hearing on April 9, 1996, the court issued a May 13, 1996, order confirming its February 12, 1996, order for genetic tests. On February 25, 1997, the court ordered "[c]ompletion of blood draws by March 25, 1997." By motion of September 9, 1997, counsel for the State moved for an order compelling discovery. The State also requested the court to strike Terry's answer and render judgment by default. The court granted the motion to compel discovery. On June 15, 1998, the court issued an order providing:
ORDERED that the defendant comply with blood draw Orders previously issued by the Court for purposes of genetic testing and that he promptly answer any discovery requests that may be outstanding within a period of not to exceed thirty (30) days from the date of this Order. Failure to do so will result in contempt proceedings initiated by the Court, with sanctions to include strinking [sic] the defendant's answer and entering judgment by default. Counsel for the plaintiff shall notify the Court if the defendant fails to comply with this Order.
[¶ 4] At a hearing on August 17, 1998, the State orally requested "that the Court enter a default judgment against [Terry] as the Court indicated that it would do in its order of June 15th." On September 2, 1998, the court issued an order providing:
The defendant having failed to comply with the Court's Orders concerning the taking of blood draws for purposes of genetic testing, and pursuant to Rule 11.5 of the North Dakota Rules of Court, and pursuant to NDCC 14-17-14.1, it is hereby
ORDERED that the defendant's answer is hereby stricken and a judgment will be entered establishing the relationship of parent and child between the defendant [Terry] and [Shelly]. The support obligation will be determined at a hearing to be noticed by the attorney for the Regional Child Support Unit, and the judgment will thereafter be issued.
[¶ 5] After a hearing, the district court issued a judgment adjudging Terry the natural father of Shelly, and ordering Terry to reimburse the Ward County Social Service Board in the amount of $6,996.00. Terry appealed. Although Terry concedes he repeatedly failed to comply with the trial court's orders to provide samples for genetic testing, he contends the court's entry of a default judgment was clearly erroneous or an abuse of discretion.
[¶ 6] Section 14-17-10(1), N.D.C.C., provides: "The court may, and upon request of a party shall, require the child, mother, or alleged father to submit to genetic tests, including tests of blood or other tissues." Section 14-17-14.1(2), N.D.C.C., provides:
Except as provided in subsection 3, if a person alleged to be the father in an action to determine the existence of the father and child relationship has pled or appeared in the action, but has ... failed to appear for or refused to submit to genetic testing, and those facts are made to appear by affidavit or otherwise, the person, ... must be served with written notice of the application for judgment as least eight days before the *577 hearing on the application. If the person fails to appear at the hearing on the application or appears but fails either to cure a previous failure or refusal, or to provide satisfactory assurance of the person's willingness to cure a previous failure or refusal, the court shall direct the clerk to enter an appropriate judgment by default establishing the existence of the father and child relationship.
See also N.D.R.Ct. 11.5: "The trial court may take any appropriate action against any person failing to perform an act required by the rules or required by court order. Appropriate action includes a sanction provided by Rules 5, 11, 16, 25, 30, 37, 40, 45, or 56, N.D.R.Civ.P." Under N.D.R.Civ.P. 37(b)(2)(C), if a party fails to obey an order to provide or permit discovery, the court may issue an order striking the disobedient party's pleadings or rendering a judgment by default.
[¶ 7] "This Court has recognized the important public and social policy involved in determining a child's biological parents" and the child "is the ultimate beneficiary of the action." Williams County Soc. Svcs. Bd. v. Falcon, 367 N.W.2d 170, 175 (N.D.1985). While we are concerned with the effect a paternity adjudication by a default judgment may have on a maturing child, it is important to note this is not a case, like Throndset v. J.R., 302 N.W.2d 769, 774 (N.D.1981), where a man has sought to vacate a default paternity judgment because he "wishes to have blood tests taken to determine his parenthood." Terry has repeatedly failed to comply with court orders directing him to provide samples for genetic testing to determine his parenthood. Terry's conduct was a "deliberate and flagrant disregard of the court's orders," Lang v. Bank of North Dakota, 530 N.W.2d 352, 355 (N.D.1995), and the trial court was not required to allow Terry to treat its orders as "empty noise," McCullough v. Swanson, 245 N.W.2d 262, 265 (N.D.1976). We conclude the trial court properly struck Terry's answer and rendered judgment by default in accordance with N.D.C.C. § 14-17-14.1(2), N.D.R.Ct. 11.5, and N.D.R.Civ.P. 37.
[¶ 8] We need not address other issues Terry has raised, as answers are not necessary to a determination of this appeal. See, e.g., State v. Evans, 1999 ND 70, ¶ 17, 593 N.W.2d 336.
[¶ 9] The judgment is affirmed.
[¶ 10] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.
NOTES
[1] All party names are pseudonyms.
[2] Genetic testing later excluded this man as the biological father of Shelly.