Filed 5/11/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 85

State of North Dakota, Plaintiff and Appellee

v.

Shane Keith Duncan, Defendant and Appellant

No. 20100323

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Pamela Ann Nesvig (argued), Assistant State’s Attorney, Burleigh County Courthouse, P.O. Box 5518, Bismarck, ND 58506-5518, for plaintiff and appellee.

Michael Ray Hoffman (argued), 120 North 3rd Street, Suite 100, P.O. Box 1056, Bismarck, ND 58502-1056, for defendant and appellant.

State v. Duncan

No. 20100323

Crothers, Justice.

[¶1] Shane Keith Duncan appeals the district court’s judgment entered after a jury convicted him of terrorizing, interference with a telephone during an emergency phone call and simple assault-domestic violence.  He argues the judgment should be reversed and an acquittal be entered because of prosecutorial misconduct.  We affirm.

I

[¶2] Shane Duncan was charged with simple assault-domestic violence for willfully causing bodily injury to his wife Barbara Duncan on February 4, 2010, with terrorizing for threatening Barbara Duncan with a gun on February 6, 2010, and with intentionally interfering with Barbara Duncan’s emergency telephone call on February 6, 2010.

[¶3] Shane Duncan pled not guilty to the three charges, and a jury trial was held on July 14, 2010.  The State called Barbara Duncan to testify.  Barbara Duncan testified she is Shane Duncan’s wife and has been married to Shane Duncan for almost three years.  Barbara Duncan refused to testify about the events occurring on February 6, 2010.  The district court instructed Barbara Duncan to answer the questions, but she still refused.  The district court informed Barbara Duncan she would be held in contempt of court if she persisted in her refusal to answer questions and could be sent to jail and charged with a misdemeanor.  Barbara Duncan still refused to testify, and the district court jailed her for contempt after informing her she could get out if she testified.

[¶4] Prior to jailing Barbara Duncan for contempt, the district court asked Shane Duncan’s counsel if he wanted to comment regarding Barbara Duncan’s refusal to testify.  Shane Duncan’s counsel responded, “I guess I’d just advise her to seek counsel.  I have no comment on that.”

[¶5] After ascertaining Barbara Duncan was not going to testify, the district court ruled an audio tape recording of the 911 call Barbara Duncan made was admissible under the excited utterance and the present sense impression exceptions to the hearsay rules.  The district court stated that even though the call was made two hours after the events occurred, it was admissible because Barbara Duncan was under stress due to the event, evidenced by her driving to town and buying another cellular telephone to make the telephone call.  The district court also ruled the law enforcement officers could not testify about what Barbara Duncan told them.

[¶6] The audio recording of the 911 call was admitted and played for the jury.  Barbara Duncan made the call around 7:30 p.m. on February 6, 2010.  During the call, Barbara Duncan told the 911 operator that the events of a domestic situation occurred at 4:00 p.m. that day and that Shane Duncan had left the scene, their residence, around 5:00 p.m.

[¶7] Barbara Duncan told the 911 operator Shane Duncan had pointed a .300 Ultra Mag rifle at her.  She also stated that Shane Duncan broke her cell phone when she attempted to call 911, that he broke her daughter’s cell phone and that Barbara Duncan had left the residence at 5:30 p.m. to buy a new cell phone.

[¶8] Barbara Duncan stated during the 911 call that she had not planned to call 911, but that after she bought her new cell phone, she and Shane Duncan were exchanging text messages and Shane Duncan threatened a divorce.  Twice she told the 911 operator she was fine and stated she was not hurt.  She indicated Shane Duncan’s parents were present during the incident and they would not let Shane Duncan hurt her.  However, a lamp was broken.

[¶9] The jury found Shane Duncan guilty of terrorizing, interference with a telephone during an emergency call and simple assault-domestic violence.  Judgment was entered based on the jury’s verdict.  Shane Duncan appeals.

II

[¶10] Shane Duncan presents three issues, all framed as prosecutorial misconduct that denied his due process right to a fair trial.  This Court applies “a de novo standard of review to a claim of a constitutional violation.”  
State v. Aguero
, 2010 ND 210, ¶ 16, 791 N.W.2d 1.

[¶11] Shane Duncan alleges his due process rights were violated when the State sought admission of the 911 telephone call recording because the call violated his confrontation clause rights.  He does not argue the district court erred admitting the 911 call recording.  The State responds that use of the 911 call was not misconduct because the confrontation clause’s availability requirement only requires a witness to appear at trial and Barbara Duncan appeared.

[¶12] We have explained, 

“prosecutorial misconduct may ‘so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.’  However, we have also recognized that not every assertion of prosecutorial misconduct, followed by an argument the conduct denied the defendant his constitutional right to a fair trial, automatically rises to an error of constitutional dimension.  ‘To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant’s right to a fair trial.’  To determine whether a prosecutor’s misconduct rises to a level of a due process violation, we decide if the conduct, in the context of the entire trial, was sufficiently prejudicial to violate a defendant’s due process rights.”

State v. Kruckenberg
, 2008 ND 212, ¶ 20, 758 N.W.2d 427 (internal quotations omitted).

[¶13] Shane Duncan contends the State committed prosecutorial misconduct by seeking the introduction of the 911 call, which he claims was “clearly inadmissible” evidence violating the confrontation clause under 
Davis v. Washington
, 547 U.S. 813, 822 (2006).  The confrontation clause provides that “[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.”  U.S. Const. amend. VI.  The United States Supreme Court held this amendment prohibits the admission of testimonial hearsay against the accused, unless the witness is unavailable to testify and the accused previously had an opportunity to cross-examine the declarant.  
Crawford v. Washington
, 541 U.S. 36, 68 (2004).  The confrontation clause does not apply to non-testimonial hearsay.  
Id.
  
See also
 
Davis
,  at 821 (only testimonial statements cause the declarant to be a “witness” within the meaning of the Sixth Amendment).  A criminal defendant’s right to confront witnesses is an important right, the denial of which can nullify the result of a trial.  
See
 
Crawford
, at 69; 
Davis
, at 834.

[¶14] Shane Duncan correctly observes the United States Supreme Court reversed a conviction based on introduction of a 911 call in 
Davis
 because the declarant was unavailable and because Davis had no opportunity to cross-examine the declarant.  547 U.S. at 817.  However, interpretation of the confrontation clause has been anything but consistent since the 2004 
Crawford
 decision.  
See, e.g.
, 
Shorter v. State
, 33 So. 3d 512, 523 (Mo. Ct. App. 2009) (holding declarant’s statements to 911 operator were not testimonial when defendant was still present during phone call); 
State v. Wright
, 726 N.W.2d 464, 474 (Minn. 2007) (declarant’s statements to 911 operator were non-testimonial even after declarant was informed defendant was in custody where declarant was repeating details for reassurance that police arrested the correct defendant); 
Neal v. State
, 186 S.W.3d 690, 692 (Tex. Crim. App. 2006) (statements from 911 call were admissible where declarant made statements while an assault was in progress); 
State v. Powers
, 99 P.3d 1262, 1264 (Wash. Ct. App. 2004) (911 call was inadmissible when declarant called to report past protection order violations, not to stop current conduct); 
People v. Cortes
, 781 N.Y.S.2d 401, 416 (N.Y. Sup. Ct. 2004) (911 calls are inadmissible under the confrontation clause); 
People v. Corella
,18 Cal.Rptr.3d 770, 776 (Cal. Ct. App. 2004) (911 calls are not testimonial because they are initiated by a citizen, not police).  
Crawford
 itself has been cited in more than 27,000 cases, periodicals and briefs.  The 
Davis
 decision speaks directly to 911 calls.  547 U.S. at 817.  
Davis
 has been cited more than 5,200 times.  The State points out that one such case is 
Fowler v. State
, holding under facts similar to those at bar that defendant’s confrontation rights were not unconstitutionally impinged when a complaining witness took the stand but refused to testify with no valid claim of privilege.  829 N.E.2d 459, 467-68 (Ind. 2005).

[¶15] This large and highly uncertain body of confrontation clause law makes resolution of the underlying issue difficult.  However, Shane Duncan framed his issue as prosecutorial misconduct, requiring that we look at the prosecutor’s conduct and not, ultimately, that we resolve whether Shane Duncan’s confrontation right was violated under Sixth Amendment jurisprudence.

[¶16] We conclude the State did not engage in prosecutorial misconduct resulting in a denial of Shane Duncan’s due process right to a fair trial.  The law surrounding the confrontation clause generally is in flux.  In fact, one day prior to oral argument in this case, the United States Supreme Court issued its decision in 
Michigan v. Bryant
, and neither counsel nor this Court could determine at argument whether that case materially affected the respective positions advanced in this case.  131 S.Ct. 1143 (2011).  As a subset of the larger issue, the law surrounding the confrontation clause and use of 911 calls in particular is unsettled with case law both supporting and opposing admission of these telephone conversations.  On the basis of this highly volatile body of law, we are unprepared to conclude the prosecutor’s proffer of the 911 call so infected the trial that Shane Duncan’s due process rights were violated.

III

[¶17] Shane Duncan argues prosecutorial misconduct occurred when the prosecution elicited testimony from law enforcement officers about statements made to them by Barbara Duncan, when the State made improper comments during its opening and closing statements and when the State used language calculated to inflame the jury.

[¶18] Shane Duncan did not object to these alleged errors at trial; “thus our review is limited to determining if the prosecutor’s conduct prejudicially affected [Shane Duncan’s] substantial rights, so as to deprive him of a fair trial.”  
State v. Burke
, 2000 ND 25, ¶ 22, 606 N.W.2d 108.  This Court “exercise[s] our authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered serious injustice.”  
State v. Evans
, 1999 ND 70, ¶ 9, 593 N.W.2d 336.  “In deciding if there was obvious error, we consider the probable effect of the prosecutor’s improper comments on the jury’s ability to judge the evidence fairly.”  
Id.

A

[¶19] Shane Duncan argues the State committed prosecutorial misconduct by eliciting testimony revealing statements Barbara Duncan made to law enforcement in violation of the district court’s ruling on the statement’s admissibility.  The State asserts it did not elicit inadmissible testimony.

[¶20] While reviewing the transcript, we found two places where a witness testified about Barbara Duncan’s statements.  In the first, the district court stopped the witness from relaying Barbara Duncan’s statement, and in the second, Shane Duncan’s attorney solicited the statement through his questioning.  These two instances do not lead us to the conclusion that Shane Duncan was deprived of a fair trial.

B

[¶21] Shane Duncan argues the State committed misconduct of a constitutional magnitude when the prosecutor made inappropriate comments in her opening and closing statements and when she used words calculated to inflame the jurors.  The State argues no prosecutorial misconduct occurred.

[¶22] “A prosecutor’s ‘improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.’”  
Evans
, 1999 ND 70, ¶ 15, 593 N.W.2d 336 (quoting 
Berger v. United States
, 295 U.S. 78, 88 (1935)).  However we have explained, “Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.”  
Kruckenberg
, 2008 ND 212, ¶ 20, 758 N.W.2d 427 (quotations omitted).

[¶23] Shane Duncan asserts it was prosecutorial misconduct for the State to call the gun an “assault rifle” and refer to it as “[t]he big, big gun used to assault or kill, I should say, large game,” to call Shane Duncan a “suspect” and an “abuser” and to use the term “domestic violence.”  Shane Duncan also asserts the prosecutor made improper arguments about her opinion of the evidence in her closing argument.  We must consider these comments in light of the entire proceeding.  
State v. Paulson
, 477 N.W.2d 208, 210 (N.D. 1991).

[¶24] Here, testimony from three law enforcement officers, testimony from Shane Duncan’s mother, and photographic and physical evidence supports the jury’s verdict.  That evidence was accumulated over a one-day trial.  By contrast, the words or statements identified by Duncan occurred in isolation throughout the trial.  Although we do not condone the State’s choice of words, we cannot conclude the comments resulted in an unfair trial depriving Duncan of due process of law.

IV

[¶25] The district court’s judgment entered after the jury’s verdict finding Shane Duncan guilty of terrorizing, interference with a telephone during an emergency phone call and simple assault-domestic violence is affirmed.

[¶26] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.