2012 ND 59

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gregorio MONTANO, Defendant and Appellant.**

**No. 20110281.**

Supreme Court of North Dakota.

March 15, 2012.

Mark A. Flagstad, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Russell J. Myhre, Valley City, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Gregorio Montano appealed from a criminal judgment entered after a jury

found him guilty of possession of marijuana with intent to deliver and delivery of marijuana. Montano contends we should reverse his convictions and remand this case for further proceedings because his constitutional rights to due process and a fair trial were violated when the district court failed to impose sanctions after the prosecutor made an inappropriate racial comment during rebuttal argument, and the evidence at trial was insufficient to sustain his convictions. We affirm.

I.

[¶ 2] The testimony at trial described the events that led to the criminal charges filed against Montano. Leeann Whitebull testified she spoke with Elva Nava about bringing marijuana to Minot from Texas in September 2010. On September 10, 2010, Montano and Nava arrived in Bismarck. Whitebull testified Montano and Nava brought approximately ten pounds of marijuana with them. Whitebull drove Montano and Nava to Minot where they stayed at her apartment. Whitebull returned to Bismarck. While in Bismarck, Whitebull met Eddie Monroe, an African American, who was working as a confidential informant. Whitebull told Monroe she knew where he could purchase marijuana, and Monroe agreed to purchase two pounds of marijuana.

[¶ 3] On September 13, 2010, Monroe, accompanied by several task force agents, drove from Bismarck to Minot to purchase the marijuana. Monroe told law enforcement that the price of the marijuana was $2,800, and law enforcement gave Monroe that amount after photocopying each of the bills. Upon arriving in Minot, Monroe went to a parking lot to meet a vehicle driven by Whitebull in which Montano, Nava, and Whitebull's minor child were passengers. The parties drove to Whitebull's apartment. Monroe testified he entered the apartment and gave Whitebull $2,500. Monroe said Whitebull gave the money to Montano, who counted the money and put it in his pocket. Monroe testified he watched Montano go into a room and get the marijuana from under a mattress. Monroe said that Montano did most of the talking during the transaction. Whitebull testified that Monroe gave her the money, and she gave the money to Montano. Whitebull testified she was the "middle person," and Montano had the marijuana. Whitebull testified the marijuana was in Montano's bag, and she knew it was his bag because it had men's clothing in it.

[¶ 4] Monroe left Whitebull's apartment and met with the task force agents at a different location. Monroe gave the two pounds of marijuana to the agents and they searched Monroe's person and vehicle, which is standard procedure after a controlled purchase of drugs. The agents found $300 in Monroe's vehicle. Monroe admitted to the agents and testified at trial that he lied about the price of the marijuana because he wanted more money than law enforcement was already paying him as an informant. Monroe was not arrested, but his employment as a confidential informant was terminated. The agents stopped Whitebull for driving under suspension and arrested Whitebull, Montano, and Nava. The vehicle was impounded and an impound search was conducted. During the search, law enforcement found marijuana in the trunk and $400 of the marked bills in a purse that was identified as belonging to Whitebull.

[¶ 5] Law enforcement applied for and obtained a search warrant for Whitebull's apartment. Nava, who had been released, was present when the warrant was executed. During the search, officers found $2,100 of the purchase money. One officer testified he found $2,100 of the purchase

money in a bag. The same officer said the evidence inventory and receipt form also stated $2,100 of the purchase money was found in a bag. A different report stated $1,600 of the purchase money was found in the bag, and Nava handed an officer $500 of the purchase money. One officer testified approximately five pounds of marijuana was located in a bag. The officers who found the money and marijuana testified that the bag contained what they identified as male clothing due to the nature and size of the clothes. The officers concluded that the bag belonged to Montano because he was staying at Whitebull's apartment. Whitebull testified no other man had access to her apartment at that time.

[¶ 6] Montano was charged with possession with intent to deliver marijuana and delivery of marijuana. Whitebull was charged with the same offenses and pled guilty prior to Montano's trial. A jury trial on Montano's charges was held on May 9–10, 2011. During closing arguments, Montano's attorney stated:

> What else points to Mr. Montano's guilt[ ]? Well we have Eddie Monroe. Mr. Monroe, the confidential informant, the narc. Mr. Monroe exemplifies what is exactly wrong with the system of using people like that to conduct controlled buys. I know we all had a good laugh when Agent Fontenot said that he wouldn't answer my question because it was so ridiculous. But really, how many wrongs do we have to tolerate, as a society, to make a right? The ends justify the means. That's a morally bankrupt argument. That's a dead end argument. When you have a law enforcement agency that takes Mr. Monroe, not once, but twice a convicted felon, and not only did he get a break down in Wisconsin, as I recall the testimony, he had delivery of THC of less than 200 grams hanging over his head. That

went away when he became an informant for the folks in Wisconsin.

Montano's attorney further argued:

> [The agent] admits that they use convicted felons, that they use people they cut deals with not to . . . prosecute, that they use people that they talk with the states attorneys about, and the states attorneys will routinely accept their recommendations about charges. They pay people to become confidential informants. They use lies, deceit, and trickery.

During the State's rebuttal argument, the following colloquy took place:

> [THE STATE:] Another thing about Monroe. Gotta use a little logic here. The defense wants you to believe that there's something wrong with the system, that they use people like that. What's that mean? Black people?
>
> [THE DEFENSE]: Objection. Your Honor, that is an unfair mischaracterization of my statement. I have no racial bias whatsoever.
>
> THE COURT: Sustained.

The defense did not request a curative instruction or other remedy, and the district court did not take remedial action sua sponte. The jury returned guilty verdicts on both charges.

## II.

[¶ 7] Montano argues the district court erred in failing to impose sanctions when the prosecutor made an inappropriate racial comment during rebuttal argument. Montano asserts his constitutional rights to due process and a fair trial were violated as a result and requests this Court to reverse his convictions.

[¶ 8] In reviewing Montano's claim, we first determine if the prosecutor's comment constitutes misconduct, and if so, we examine whether the misconduct

had a prejudicial effect. *State v. Vondal,* 2011 ND 186, ¶ 12, 803 N.W.2d 578. "To determine whether a prosecutor's misconduct rises to a level of a due process violation, we decide if the conduct, in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights." *Id.* (quoting *State v. Kruckenberg,* 2008 ND 212, ¶ 20, 758 N.W.2d 427). "[E]ven when a defendant's objection to a prosecutor's improper argument is sustained by the trial court, the failure to request a cautionary instruction waives the objection to the allegedly prejudicial statement." *State v. McKinney,* 518 N.W.2d 696, 701 (N.D.1994). In such a case, this Court's review is limited to determining if the alleged error constitutes obvious error affecting the substantial rights of the defendant. N.D.R.Crim.P. 52(b); *State v. Spath,* 1998 ND 133, ¶ 26, 581 N.W.2d 123. In deciding if obvious error occurred, we consider the probable effect the prosecutor's improper comment had on the jury's ability to fairly judge the evidence. *State v. Evans,* 1999 ND 70, ¶ 9, 593 N.W.2d 336. We notice obvious error cautiously and only in exceptional circumstances where the defendant has suffered serious injustice. *Id.*

[¶ 9] The defense objected to the State's comment, "Another thing about Monroe. Gotta use a little logic here. The defense wants you to believe that there's something wrong with the system, that they use people like that. What's that mean? Black people?" The district court sustained Montano's objection. Montano did not request a cautionary instruction, therefore our review is limited to deciding whether the district court committed obvious error affecting Montano's substantial rights. *McKinney,* 518 N.W.2d at 701.

[¶ 10] From reading the trial transcript, it is reasonably clear that the defense attorney's use of "people like that" was a reference to the use of convicted criminals and liars as confidential informants. Although the prosecutor may have taken advantage of this and made an inappropriate comment, the probable effect of the prosecutor's comment on the jury's ability to fairly judge the evidence was minimal. "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *Kruckenberg,* 2008 ND 212, ¶ 20, 758 N.W.2d 427 (quoting *City of Grand Forks v. Cameron,* 435 N.W.2d 700, 704 (N.D.1989)). At oral argument, Montano's attorney conceded that "this was a very clean trial," and, other than the prosecutor's comment during rebuttal argument, "there were no other real references to race" at trial. The prosecutor's comment and the district court's failure to impose sanctions or take other remedial action sua sponte did not rise to the level of obvious error.

### III.

[¶ 11] Montano also argues there is insufficient evidence to sustain his convictions because Monroe's testimony was compromised due to his attempt to steal some of the purchase money and Whitebull's testimony was tainted because she entered into a plea agreement with the State. This Court's standard of review for claims of insufficiency of the evidence is well established:

[T]his Court views the evidence most favorable to the verdict and all reasonable inferences drawn from such evidence. The defendant must show the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. This Court will not weigh conflicting evidence or judge the credibility of witnesses; rather, we will only reverse a conviction if no

rational fact-finder could have found the defendant guilty beyond a reasonable doubt.

*Vondal*, 2011 ND 186, ¶ 22, 803 N.W.2d 578 (quoting *State v. Grant*, 2009 ND 210, ¶ 22, 776 N.W.2d 209) (internal citations omitted).

[¶ 12] Our review of the record in this case reveals there is sufficient evidence to sustain Montano's convictions. In deciding sufficiency of the evidence claims, "we do not invade the province of the jury to weigh the evidence or determine the credibility of witnesses." *Buehner v. Hoeven*, 228 N.W.2d 893, 904 (N.D. 1975). Montano argues Monroe and Whitebull were impeached and therefore their testimony should be disregarded. As exemplified by the jury instructions, it was for the jury to decide whether Monroe and Whitebull were impeached and the weight and credibility to give their testimony. Even if the jury decided Monroe and Whitebull were impeached and their testimony should be disregarded, other evidence presented at trial was sufficient to sustain the convictions. Law enforcement officers testified they found some of the purchase money and marijuana in a bag containing what they determined was men's clothing due to the size and nature of the clothes. The bag was found in Whitebull's apartment, and Montano had access to the apartment. From this evidence, a jury could draw a reasonable inference that the bag belonged to Montano. Viewing the evidence in the light most favorable to the verdict, a reasonable fact-finder could have found Montano guilty beyond a reasonable doubt.

## IV.

[¶ 13] We affirm the district court judgment.

[¶ 14] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.