2015 ND 101

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Matthew Alan JASMANN, Defendant and Appellant.**

No. 20140322.

Supreme Court of North Dakota.

April 28, 2015.

Rehearing Denied May 27, 2015.

Frederick R. Fremgen, State's Attorney, Jamestown, ND, for plaintiff and appellee.

Lee M. Grossman, Valley City, ND, for defendant and appellant.

McEVERS, Justice.

[¶ 1] Matthew Alan Jasmann appeals from a judgment entered on a jury's verdict finding him guilty of gross sexual imposition. We affirm the judgment concluding the State did not commit prosecutorial misconduct, the failure of the district court to give a cautionary instruction did not amount to obvious error, and sufficient evidence supports the jury's verdict.

I

[¶ 2] According to trial testimony, Jasmann met his family members and friends at a local bar. While at the bar, Jasmann met A.W. who was with one of Jasmann's relatives. When the bar was about to close, some of the individuals, including Jasmann and A.W., went to the apartment where Jasmann was spending the night, to have a party. After a few hours, everyone had left the apartment, except for Jasmann, A.W., and two other individuals. The two other individuals slept in a bedroom of the apartment. Jasmann and A.W. slept in the living room. A.W. testi-

fied she fell asleep and awoke to Jasmann having sexual intercourse with her. The next day, A.W. reported to police that she had been sexually assaulted. A.W. made a phone call to Jasmann, which was recorded by law enforcement, to discuss the incident with him. The next day Jamestown Police Department Officer John Gletne interviewed Jasmann about the incident. According to the transcript of this interview that was read into evidence at trial, Jasmann claims A.W. was awake and initiated the sexual contact, however, Jasmann denied sexual intercourse occurred. Jasmann was charged with gross sexual imposition.

[¶ 3] Before trial, Jasmann's attorney requested the transcript of the interview between Jasmann and Officer Gletne be redacted to omit Jasmann's statements about a previous conviction on a particular page of the transcript, if the State offered the transcript in evidence. The State redacted the requested portion of the transcript and another portion it found on its own volition. During trial, the State read the entire interview transcript into evidence, as redacted, including a statement Jasmann made: "I don't do criminal stuff like I used to." Jasmann's attorney did not object at the time the statement was read, but did discuss it with the court during an in chambers hearing held afterward. Jasmann's attorney claimed he did not object to avoid calling the jury's attention to the statement. After discussing the matter with the State and Jasmann's attorney, the district court decided to strike the statement from the transcript, before the jury received it as an exhibit. At the conclusion of the trial, the jury found Jasmann guilty of gross sexual imposition. Jasmann appealed. On appeal, Jasmann argues that the State committed prosecutorial misconduct by improperly introducing at trial a statement where he admitted he had engaged in criminal behavior in the past. Jasmann also argues

there was insufficient evidence to sustain the jury's verdict.

## II

[¶ 4] Jasmann argues that the State committed prosecutorial misconduct when it read the interview transcript into evidence, without redacting Jasmann's statement.

[¶ 5] "In reviewing a claim of prosecutorial misconduct, this Court must first determine whether the prosecutor's actions were misconduct and, if they were, then ... examine whether the misconduct had prejudicial effect." *State v. Evans,* 2013 ND 195, ¶ 26, 838 N.W.2d 605 (quotation marks omitted). "[P]rosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Kruckenberg,* 2008 ND 212, ¶ 20, 758 N.W.2d 427 (quotation marks omitted). This Court applies a de novo standard of review when determining "whether facts rise to the level of a constitutional violation, including a claim that prosecutorial misconduct denied a defendant's due process right to a fair trial." *State v. Pena Garcia,* 2012 ND 11, ¶ 6, 812 N.W.2d 328.

[¶ 6] Here, at the pretrial conference, the State indicated it would introduce a recording and transcript of Jasmann's interview with Officer Gletne. Jasmann did not object to the introduction of the interview, but requested a certain portion of the interview be redacted. At this time, Jasmann moved the district court to order the State to omit any references from the interview in which Jasmann "refers to a past sexual offense to Detective John Gletne; this specifically appears on the Transcript at Page 17." The district court and attorneys then discussed which specific portions Jasmann requested be redacted:

    MR. MYHRE: Yes. I believe that specifically there appears a reference in

the transcript on page 17 to a prior sexual offense when the defendant was 18 years of age. Since the defendant is not going [to] testify, under the rules of evidence and admissibility for prior convictions, we would request that that portion be edited or omitted from that portion of the recording.

MR. FREMGEN: We've already redacted it from the copy that's marked that's been given to Mr.—

THE COURT: Oh, I see there's some redacted parts on the top on page 17.

. . .

THE COURT: Was there anywhere else?

MR. FREMGEN: There was another area too. I only brought the court's copy and Mr. Myhre's copy of the exhibits. I don't have mine. But later on there was discussion about him saying I'll have to plead guilty because if I don't, I'll just get the maximum with my record, or words to that effect. And so that's redacted a little bit farther down. It might be a page later than the first one where he referred to having prior problems. And I don't think he used the word "convictions" in the first one.

THE COURT: But that's been deleted as well?

MR. FREMGEN: Yes, sir. And it's marked redacted so that we have some ease in finding it. It's marked with handwriting "redacted."

During trial, the State conducted direct examination of Officer Gletne. The State asked Officer Gletne about particular parts of the interview. Jasmann's attorney asked to approach the bench, objecting to the State discussing only parts of the interview during its direct examination. Jasmann requested the transcript be read into the record in its entirety. The district court ordered the State read the transcript, State's exhibit 3, into the record in its entirety. The State then offered the redacted transcript into evidence, and Jasmann did not object. The State read the redacted transcript into evidence, with Officer Gletne reading his statements from the interview and the prosecutor reading Jasmann's statements. The State read the following statements from the transcript: "I have a job. I live an honest life. *I don't do criminal stuff like I used to.*" (Emphasis added.) Afterward, the district court held an in chambers meeting to discuss the introduced statement regarding Jasmann's criminal history:

MR. MYHRE: ... I had filed with the court yesterday a motion in limine. I'm not sure if I articulately described it, but there was a portion of the transcript where—Mr. Jasmann did respond about how he did not do criminal things like he used to do. I did not raise an objection on the record because I did not want to draw attention to it in front of the jury, but this did slip into the record and I would request the court—I'm not sure exactly how to address this in terms of whether we should do a curative instruction or if we should just let this pass at this particular point in time, but I did want to bring that up that that part had not been redacted.

THE COURT: Mr. Fremgen, do you have any comment on that? I remember seeing that too. I was wondering—

MR. FREMGEN: That was accidental. We had, of our own volition, found the other two provisions and redacted them. It's a conundrum for the defense, and that's why Mr. Myhre says he doesn't know whether he wants to ask for an instruction or not. It's the old— as Professor [Ahlen] used to say at UND, do you bring attention to the white elephant you don't want anybody to look at, or do you just leave it unmentioned again. And I can't unring the bell.

THE COURT: Right. It's on—What you're referring to is on page 21 where he says: I have a job, I live an honest life, I don't do criminal stuff like I used to.

You know, he—It may be—You know, I'm not sure. We could strike that out, I don't do criminal stuff like [I] used to. On the other hand, he is contrasting it to his present life. And it does, because of his familiar—there are other parts of the transcript where he does show familiarity with the process, talks about well. I guess you guys will be doing a warrant, and about let me know and I'll turn myself in, and that sort of thing. So I think it may be self-evident that he had some familiarity with the criminal system.

MR. MYHRE: Your Honor, perhaps the resolution to this would be it's in on the record, I acknowledge that, but that before the exhibit is presented to the jury, perhaps we could redact that.

THE COURT: That would be fine. It's just, it's just one line, and that might be the way to handle this.

MR. FREMGEN: I have no objection, your Honor. If I would have realized it was in there and been careful, I would have redacted it of my own volition.

MR. MYHRE: And I will admit I overlooked that when I was reading through the transcript initially and thought that the impact was rather minimal anyway.

THE COURT: Yeah. I mean it caught my attention right away when it came up in the transcript, but I don't know how—you know, if the jury pays attention to that or not.

Jasmann's attorney did not object to the statement at the time it was read, nor did he request a curative instruction. Jasmann's attorney solely requested that the statement be redacted before the jury re- ceived the transcript, which the district court ordered.

[¶ 7] In the context of a prosecutor's closing arguments we have stated, "[a] defendant may not claim error for arguments that are invited." *Kruckenberg*, 2008 ND 212, ¶ 28, 758 N.W.2d 427. We similarly apply this concept here. Prior to trial, Jasmann's attorney had an opportunity to review the transcript and he requested that a certain statement referring to Jasmann's prior sexual offense be omitted from the transcript. The State redacted that statement, along with another similar statement it found on its own volition. Jasmann did not request the statement at issue be redacted. During direct examination of Officer Gletne, the State asked him questions about the interview, but Jasmann objected, requesting the redacted transcript be read into evidence in its entirety. After the transcript was read, including the statement at issue, the parties and court held a meeting, where Jasmann's attorney expressed concern about the statement for the first time. Referring to the statement, Jasmann's attorney stated: "[a]nd I will admit I overlooked that when I was reading through the transcript initially and thought that the impact was rather minimal anyway." We cannot conclude this qualifies as prosecutorial misconduct because Jasmann requested the transcript be read into evidence, when he already knew the statement was in the transcript. Because we conclude there is no misconduct, we need not determine whether there was a prejudicial effect. Therefore, under the circumstances here, when a defendant's attorney reviewed an interview transcript before trial, acknowledged he noticed a certain questionable statement in the transcript, but believed the impact was minimal, requested the transcript be read in its entirety at trial, and then expressed concern about the statement afterward, we decline to de-

termine the State engaged in prosecutorial misconduct.

[¶ 8] As part of Jasmann's prosecutorial misconduct claim, he also argues the State failed to provide notice required under N.D.R.Evid. 404(b). Not only was this issue not raised below, Jasmann's trial counsel specifically indicated he had no objection to the admission of the evidence, so long as particular portions were redacted. In doing so, Jasmann waived his right to object on appeal, absent obvious error. *See State v. Beciraj*, 2003 ND 173, ¶ 22, 671 N.W.2d 250.

[¶ 9] We also consider whether the district court's failure to provide an unrequested cautionary instruction to the jury regarding the statement qualifies as obvious error. "Even when a defendant's objection to a prosecutor's improper argument is sustained by the trial court, the failure to request a cautionary instruction waives the objection to the allegedly prejudicial statement." *State v. Montano*, 2012 ND 59, ¶ 8, 813 N.W.2d 612; *see also State v. Welch*, 426 N.W.2d 550, 553 (N.D.1988) ("[I]n order to properly preserve the question of prejudice for appellate review, counsel must ask the trial court to give the jury a cautionary instruction."). When the defendant fails to request a cautionary instruction, this Court's review is limited to determining if the alleged error constitutes obvious error affecting the substantial rights of the defendant." *Montano*, 2012 ND 59, ¶ 8, 813 N.W.2d 612.

[¶ 10] "This Court exercises our authority to notice obvious error cautiously and only in exceptional circumstances in which the defendant has suffered serious injustice." *State v. Duncan*, 2011 ND 85, ¶ 18, 796 N.W.2d 672 (quotation marks omitted). Under N.D.R.Crim.P. 52(b), "[a]n obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention." This

Court may notice a claimed obvious error "if there was (1) error, (2) that is plain, and (3) affects substantial rights." *State v. Clark*, 2004 ND 85, ¶ 6, 678 N.W.2d 765. In order for an error to affect substantial rights, it "must have been prejudicial, or affected the outcome of the proceeding." *State v. Erickstad*, 2000 ND 202, ¶ 22, 620 N.W.2d 136. The defendant has the burden to show the alleged error was prejudicial. *State v. Jensen*, 2000 ND 28, ¶ 18, 606 N.W.2d 507. "Even if the defendant meets his burden of establishing obvious error affecting substantial rights, the determination whether to correct the error lies within the discretion of the appellate court and the court should exercise that discretion only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Patterson*, 2014 ND 193, ¶ 4, 855 N.W.2d 113 (quotation marks omitted).

[¶ 11] Here, Jasmann's attorney expressed concern over the statement at issue in an in chambers hearing, outside the presence of the jury. The parties discussed providing a cautionary instruction, but, ultimately, Jasmann's attorney did not request a cautionary instruction, in order to avoid drawing attention to the statement. Instead, he solely suggested that the statement be redacted from the transcript before the jury received it during deliberations. As part of the in chambers discussion, the trial court considered the phrase in context with the preceding sentences and noted "[o]n the other hand, he is contrasting it to his present life." When viewed in context, the statement may show Jasmann had changed his lifestyle for the better. Jasmann has not shown any legal basis requiring the district court to provide a cautionary instruction, over the defendant's objection. In fact, Jasmann's argument appears contrary to this Court's case law regarding a district court's failure to provide a cautionary instruction. We have stated "a trial court's

failure to give such an instruction, where the defendant neither requested the instruction nor objected to its absence, does not constitute per se reversible error." *State v. Padgett*, 410 N.W.2d 143, 147 (N.D.1987); *see also State v. Ellis*, 2001 ND 84, ¶ 23, 625 N.W.2d 544 (concluding district court did not err by not giving an unrequested curative instruction); *State v. Rodriguez*, 454 N.W.2d 726, 730 (N.D. 1990) (declining to notice obvious error when party failed to request a cautionary instruction); *Welch*, 426 N.W.2d at 554 (holding trial court did not commit obvious error in failing to give a curative instruction not requested). This Court should only correct an alleged obvious error if "there is a clear deviation from an applicable legal rule under current law." *State v. Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658. We conclude the district court's failure to give a jury instruction not requested does not amount to "a clear deviation from an applicable legal rule." *Id.; see also State v. Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774 ("There is no obvious error when an applicable rule of law is not clearly established."). Under the circumstances of this case, the district court's failure to give an unrequested cautionary instruction regarding a statement in a transcript Jasmann invited to be read to the jury does not amount to obvious error.

[¶ 12] Likewise, it was not obvious error for the district court to admit the transcript into evidence without reasonable notice under N.D.R.Evid. 404(b). Jasmann's attorney was aware of the State's intent to offer the evidence prior to trial and agreed to its admission into evidence as an apparent trial tactic. Admission of the transcript allowed Jasmann to tell his side of the story and impeach the victim, without having to take the witness stand.

III

[¶ 13] Jasmann argues the evidence is insufficient to support the jury's verdict, finding him guilty of gross sexual imposition. Jasmann does not dispute that a sexual act occurred, rather he argues insufficient evidence exists to prove beyond a reasonable doubt that Jasmann knew or had reasonable cause to believe that A.W. was unaware a sexual act was being committed. Jasmann preserved the issue of sufficiency of the evidence for appellate review by timely moving for judgment of acquittal under N.D.R.Crim.P. 29. *See State v. O'Toole*, 2009 ND 174, ¶ 8, 773 N.W.2d 201.

[¶ 14] "This Court's review of the sufficiency of the evidence to support a guilty verdict by a jury is highly deferential." *State v. Carpenter*, 2011 ND 20, ¶ 5, 793 N.W.2d 765.

"When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *State v. Schmeets*, 2007 ND 197, ¶ 8, 742 N.W.2d 513. "The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict." *Id.* "A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor." *Id.*

*State v. Owens*, 2015 ND 68, ¶ 16, 860 N.W.2d 817.

[¶ 15] Jasmann was charged with gross sexual imposition, in violation of N.D.C.C. § 12.1–20–03(1)(c), which provides "[a] person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

... [t]hat person knows or has reasonable cause to believe that the victim is unaware that a sexual act is being committed upon him or her." At trial, A.W. testified she awoke to Jasmann having sexual intercourse with her and she told him to stop. A.W. reported the incident to law enforcement the next day. A report was admitted that showed Jasmann's DNA was found on A.W.'s vaginal swab. The forensic scientist who conducted the analysis of the swab testified regarding the results. At the conclusion of trial, the jury found Jasmann guilty of the crime of gross sexual imposition.

[¶ 16] Under the circumstances of this case, only Jasmann and A.W. were involved in the incident at issue. Jasmann elected not to testify, which is his right. As such, of the two individuals involved in the incident, the jury only heard A.W.'s testimony. The jury had the opportunity to listen to A.W. and determine whether it found her credible. In a sufficiency of the evidence appeal, this Court looks only to the evidence and reasonable inferences most favorable to the verdict. *Owens,* 2015 ND 68, ¶ 16, 860 N.W.2d 817. This Court does not weigh the evidence or judge the credibility of the witnesses. *Id.* at ¶ 17. Viewing the evidence most favorable to the verdict, we conclude sufficient evidence in the record supports the jury's verdict.

### IV

[¶ 17] We affirm the judgment entered after the jury found Jasmann guilty of gross sexual imposition.

[¶ 18] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.