2016 ND 94

**CITY OF BISMARCK, Plaintiff and Appellee**

**v.**

**Barbara SOKALSKI, Defendant and Appellant.**

**No. 20150151.**

Supreme Court of North Dakota.

May 26, 2016.

Jason J. Hammes, Assistant City Attorney, Bismarck, N.D., for plaintiff and appellee.

Michael R. Hoffman, Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Barbara Sokalski appeals from a judgment entered after a jury convicted her of driving a vehicle under the influence of alcohol. We conclude the district court did not abuse its discretion in denying Sokalski's new trial motion because she failed to establish the City's prosecution had presented false testimony and a "false case" against her. We affirm.

I

[¶ 2] On May 12, 2014, at about 1:30 a.m., Bismarck Police Officer Paul Olson was northbound in his patrol vehicle on State Street, near Wal–Mart in north Bismarck, which is a four-lane roadway with a ditch dividing the north- and southbound lanes. While driving, Olson observed multiple vehicles in front of him swerve to the right and pull over to avoid another vehicle that was driving southbound straight into oncoming traffic. Olson pulled to the side of the road and activated his squad car's lights. The vehicle passed him, and Olson did a u-turn and pulled the vehicle over.

[¶ 3] After stopping the vehicle, Olson approached and made contact with the driver. He immediately observed a strong odor of alcohol. The driver was unable to locate her driver's license and handed him a different card with her name on it. Olson identified the driver as Sokalski. While speaking with Sokalski, he noticed she had a "stupor" look about her and difficulty speaking. Olson asked her to exit her vehicle and follow him off the roadway due to safety concerns. Sokalski, instead, walked back onto the roadway and attempted to walk on the line on the side of the road, although he had not instructed Sokalski to do any tests or actions at this point. Olson also testified at trial that

Sokalski attempted to touch her nose with her fingers multiple times and stated, "[S]ee[,] I'm not intoxicated."

[¶ 4] Olson observed her having difficulty maintaining her balance while she walked down the line and conducted a horizontal gaze nystagmus (HGN) test, which she failed. Believing her to be under the influence of alcohol, he did not conduct any further roadside tests due to safety issues. Olson testified Sokalski admitted she was coming from a tavern and he believed she was "heavily intoxicated" based on his twenty years of training and experience. Olson arrested Sokalski for driving under the influence. Olson testified at trial that he read her the implied consent advisory, he requested that she take a chemical test, and she refused. Bismarck Police Officer Josh Brown transported her to the Burleigh County Detention Center. Olson testified he informed Brown that Sokalski refused to submit to a chemical test.

[¶ 5] The City charged Sokalski with driving under the influence of alcohol or drugs and with refusal to submit to a chemical test. She pleaded not guilty to the charges in Bismarck municipal court. Sokalski requested her case be transferred from municipal court to the district court for a jury trial. In August 2014, Sokalski made several pre-trial motions in the district court, including motions requesting the court to suppress all evidence of her alleged refusal to take the blood test, to exclude evidence of HGN testing, and to dismiss the refusal charge. In November 2014, the court held a motion hearing, after which the court denied Sokalski's motions.

[¶ 6] In March 2015, the district court held a jury trial. Olson, Sokalski, and Brown testified at trial. The jury found Sokalski guilty of driving under the influence of alcohol or drugs, but found her not guilty of refusal to submit to a chemical test. After trial, Sokalski moved the court for new trial, arguing the prosecution presented false testimony and a "false case" against her. The court denied her motion.

## II

[¶ 7] Sokalski moved the district court for relief after trial under N.D.R.Crim.P. 33. Rule 33(a), N.D.R.Crim.P., provides in part: "On the defendant's motion, the court may vacate any judgment and grant a new trial to that defendant if the interest of justice so requires. A motion for a new trial must specify the alleged defects and errors with particularity."

[¶ 8] Under N.D.R.Crim.P. 33(a), "[a] defendant is required to assert all alleged errors with particularity in a motion for a new trial." *State v. Kovalevich*, 2015 ND 11, ¶ 10, 858 N.W.2d 625. "[A]lthough a motion for a new trial is not necessary to preserve issues for appellate review, when a new trial is sought, a defendant is limited on appeal to the grounds presented to the district court in the motion for a new trial." *Kovalevich*, at ¶ 10 (quoting *State v. Yarbro*, 2014 ND 164, ¶ 9, 851 N.W.2d 146). We review the district court's decision on a motion for a new trial under N.D.R.Crim.P. 33 for an abuse of discretion. *Kovalevich*, at ¶ 10. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or it misinterprets or misapplies the law. *Id.*

## III

[¶ 9] Sokalski argues that the prosecution presented false testimony and a "false case" against her.

[¶ 10] We have stated the standard for reviewing a defendant's prosecutorial misconduct claim:

In reviewing a claim of prosecutorial misconduct, this Court must first determine whether the prosecutor's actions were misconduct and, if they were, then . . . examine whether the misconduct had prejudicial effect. [P]rosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process. This Court applies a de novo standard of review when determining whether facts rise to the level of a constitutional violation, including a claim that prosecutorial misconduct denied a defendant's due process right to a fair trial.

*State v. Jasmann*, 2015 ND 101, ¶ 5, 862 N.W.2d 809 (citations and quotation marks omitted). Further, this Court has said that a "prosecutor's knowing use of perjured testimony violates the due process clause" and has set forth the "elements of a successful claim of this kind of prosecutorial misconduct":

> "[A] defendant must prove: (1) that the prosecution either introduced or failed to correct false testimony; (2) that the false or perjured testimony was given at trial; (3) that the prosecution knew the perjured testimony was false; (4) that the testimony was 'material'; and (5) that the defendant has not waived the claim by failing to raise it at trial if he had reason to know of the falsity of the subject testimony."

*Sampson v. State*, 506 N.W.2d 722, 728–29 (N.D.1993) (quoting *Jones v. State*, 479 N.W.2d 265, 275 (Iowa 1991)), *disapproved on other grounds by Whiteman v. State*, 2002 ND 77, ¶ 17, 643 N.W.2d 704.

[¶ 11] Sokalski argues that the prosecution presented false testimony and a "false case" against her, contending Officer Olson's testimony at the pre-trial motion hearing and the City's presentation of the case to the jury cannot both be true. As the district court explained, Sokalski essentially alleges that "the officers gave such conflicting testimony on issues relating to the theory of refusal that the [district] [c]ourt should determine that Officer Olson committed perjury and further, that the prosecutor knowingly elicited the perjured testimony."

[¶ 12] Olson testified during the suppression hearing that he had read the implied consent advisory to Sokalski, he requested she take a chemical test, and she had refused. On cross-examination at the hearing, Olson testified that Brown transported Sokalski from the scene to the jail. When Sokalski's attorney asked Olson if he or Brown read the implied consent advisory to Sokalski, Olson stated: "Probably both because at one point I also did that. But I do know that Officer Brown transported her down to—he was going to transport her down to the police department, and I don't know if it was in his vehicle or outside the vehicle he did ask her on the blood test also and did probably advise of the implied consent off the card." He testified that he asked her to take a chemical test, but also conceded he did not remember whether he asked for a chemical test or a blood test. Olson further testified that Sokalski was initially supposed to go to the police department but was informed over the radio by Brown at some point that "she didn't want to take the test and she was transported to Burleigh County."

[¶ 13] During the subsequent trial, the City called Officer Olson as a witness, who testified that after he placed Sokalski under arrest, he read the implied consent advisory to her, asked her to submit to a chemical test, and she refused. On cross-examination at trial, however, Sokalski contends she established Olson had asked Brown to transport her to the Bismarck Police Department to complete a chemical

test and that the City had rested its case without calling Brown.

[¶ 14] Sokalski testified in her defense at trial that, while being transported, Brown started reading something to her while he was driving and she was in the back seat. She testified that when she told Brown she could not hear him and did not understand what he was saying, Brown had said, "That's a refusal." She further testified when she asked a refusal of what, Brown said, "You refused a blood test." Sokalski also testified she told Brown she wanted a blood test and told Olson at the jail she did not refuse the blood test. Sokalski testified Olson did not read to her the implied consent advisory and did not ask her to take a chemical test at the scene of her arrest. When the City subsequently called Brown in rebuttal at trial, he testified, "I recall transporting a female to the detention center. That's about it." Brown testified Olson told him it was a refusal and he "didn't have any of that conversation with them." Brown testified: "Basically I was a taxi ... down to the Burleigh County Detention Center."

[¶ 15] Sokalski argues on appeal that Olson's testimony at the motion hearing showed Sokalski was originally being transported to the Bismarck Police Department and en route Brown told Olson over the radio she was refusing. She asserts the City at trial "turned a blind eye" to that testimony and presented a case that Sokalski was transported only to the Burleigh County Detention Center and that Brown had nothing to do with the refusal. She asserts the City "had to know" the two stories. She contends the City called Olson as a witness and avoided testimony that Brown contacted him over the radio about the refusal. She asserts the City then called Brown in rebuttal to testify he had no involvement in the refusal, "knowing Olson had knowledge that

Brown's rebuttal testimony was wrong and false." Although she was not convicted of refusal, Sokalski contends her claim is not moot.

[¶ 16] In denying her new trial motion, however, the district court concluded Sokalski had not met her burden to prove a prosecutorial misconduct claim because she failed to establish the City had elicited perjured testimony. As the court explained:

Perjury is defined as a false statement made under oath or equivalent affirmation, or swearing or affirming the truth of a false statement previously made, when the statement is material and the person making the statement does not believe the statement to be true. N.D.C.C. [§ ] 12.1–11–01.

Officer Olson and the Defendant [Sokalski] are the only persons in this case who gave sworn testimony on two different occasions, as both testified at the trial and the Motion hearing. Officer Olson testified consistently on both occasions as to his own actions and observations from May 12, 2014. When Officer Olson testified at the Motion hearing that Officer Brown read the implied consent advisory and offered the defendant another chance to submit to the chemical test, he stated that it was his belief or his understanding that Officer Brown had done so.

[Sokalski] has not shown that Officer Olson did not believe the statement to be true when he made it. In fact, [Sokalski] testified at the Motion hearing and again at trial, that Officer Brown had read something to her about the chemical test. The fact that Officer Brown testified that he did not read the advisory to [Sokalski] or ask her to submit to the test is not proof of perjury. Officer Brown was testifying to an event which had occurred ten months prior to trial,

he had not prepared a written report and was testifying from his memory. It is not unusual that he may not have remembered the events the same as the defendant or Officer Olson. The Court finds that [Sokalski] has failed to show that the City elicited perjured testimony.

[¶ 17] Although the district court also held the matter was "moot" because the jury ultimately acquitted Sokalski on the charge of the refusal, we need not reach that issue because we conclude evidence supports the court's findings in denying the new trial motion. Simply put, we conclude Sokalski failed to establish the prosecutor's actions were misconduct and did not prove the elements for her claim of prosecutorial misconduct. *See Sampson,* 506 N.W.2d at 728–29. While there are some inconsistencies, Officer Olson's testimony was generally consistent during the proceedings, and Sokalski has provided no evidence that either Olson or Brown committed perjury by making statements they knew or believed not to be true. Moreover, there is no evidence showing the City's prosecution knew of any perjury or had any personal knowledge regarding the events of the night in question. Sokalski's attorney was present for the testimony at the suppression hearing and the trial and had the opportunity to cross-examine both Olson and Brown at trial regarding any alleged inconsistencies.

[¶ 18] Based on our review of the record, we conclude the district court did not act in an arbitrary, unreasonable, or capricious manner, and did not misinterpret or misapply the law. We therefore conclude the district court did not abuse its discretion in denying Sokalski's motion for new trial under N.D.R.Crim. P. 33.

### IV

[¶ 19] The judgment is affirmed.

[¶ 20] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.