# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 85

State of North Dakota,                                          Plaintiff and Appellee

v.

Akeem Rheim Foster,                                          Defendant and Appellant

### No. 20190298

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable James S. Hill, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Chief Justice.

Joshua A. Amundson (argued), Assistant State's Attorney, and Karlei K. Neufeld (on brief), Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

James R. Loraas, Bismarck, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]   Akeem Foster appeals from a district court judgment entered following a jury verdict finding him guilty of Terrorizing and Carrying a Concealed Weapon.  Foster contends he was denied a fair trial because he was asked during cross-examination if other witnesses were lying and because the prosecutor expressed personal beliefs about the evidence during closing arguments.  Foster also contends there was insufficient evidence to convict him of either charge.  We affirm Foster's conviction for Carrying a Concealed Weapon, reverse his conviction for Terrorizing, and remand the case to the district court.

I

[¶2]   On July 28, 2018, Foster drove to a public park in Bismarck to play soccer.  During the soccer game, Foster got into an altercation with the goaltender on his team.  The altercation evolved into a fight with at least one of the participants wielding a stick.  At some point, Foster ran to his car, grabbed his handgun and displayed it to the other players.  After displaying his handgun to the other players, Foster returned to his vehicle, drove a few blocks away from the park, and pulled over to the side of the roadway.  A law enforcement officer responding to the incident pulled his patrol vehicle up behind Foster's vehicle.

[¶3]   During his interaction with the officer, Foster disclosed he had a handgun in the glove compartment of his vehicle.  Foster's loaded handgun was subsequently located in the glove compartment.  At the time of the incident, Foster had a nondriver identification card that was issued on May 21, 2018, less than a year before the incident.

[¶4]   The State called five witnesses, including the goaltender with whom Foster had the altercation.  The goaltender testified Foster was not pursued off the soccer field and that Foster pointed the gun in his direction while Foster

yelled he was not afraid to go back to jail. The State's witnesses also testified Foster was the only person with a stick during the incident.

[¶5] Foster testified on his own behalf. Foster's testimony conflicted with earlier testimony. Specifically, Foster testified he was pursued off the soccer field and he testified the goalie had a stick during the altercation.

[¶6] During cross-examination of Foster, the prosecutor commented about earlier witnesses who had testified they saw only Foster with a stick and asked Foster if it was correct none of the other witnesses "saw the goaltender with a stick." Foster's attorney began to object and the district court overruled the objection. The prosecutor then asked Foster about the other witnesses testifying that they took a stick from Foster and followed up with asking Foster if the witnesses were lying.

[¶7] In the State's closing argument, the prosecutor stated she did not believe there was any question Foster had a gun. The prosecutor began discussing Foster's self-defense argument by stating, "Let's jump first to the part where I don't believe the story of self-defense. There isn't a witness that was called that saw --." Foster objected, arguing the prosecutor was stating her personal beliefs. The court overruled the objection. The prosecutor subsequently argued the State had "purposely brought forth not one or two witnesses, but five witnesses to tell [the jury] what happened and there was no element of self-defense." During the State's rebuttal argument, the prosecutor told the jury the defense was trying to lead them "into the weeds." Foster objected to the statement. The district court overruled the objection and the prosecutor then categorized the defense as putting up "smoke and mirrors."

[¶8] The jury found Foster guilty of both Terrorizing and Carrying a Concealed Weapon. Foster argues he was denied a fair trial by various instances of prosecutorial misconduct. Foster claims the prosecutor's questions of him during cross-examination improperly required him to compare his testimony with other witnesses, and ultimately required him to state whether one or more of the witnesses were lying. Foster also claims the prosecutor improperly stated her personal belief regarding the evidence during

2

closing arguments. Finally, Foster contends there was insufficient evidence to find him guilty of the terrorizing charge because the State failed to prove he did not act in self-defense, and insufficient evidence to prove he knowingly carried a concealed weapon in an illegal manner.

## II

[¶9] Foster claims the prosecutor's cross-examination requiring him to confirm whether earlier witnesses were lying denied him his right to a fair trial. "This Court applies a de novo standard of review when determining whether facts rise to the level of a constitutional violation, including a claim that prosecutorial misconduct denied a defendant's due process right to a fair trial." *City of Bismarck v. Sokalski*, 2016 ND 94, ¶ 10, 879 N.W.2d 88 (citing *State v. Jasmann*, 2015 ND 101, ¶ 5, 862 N.W.2d 809). When reviewing a claim of prosecutorial misconduct, this Court first determines whether the prosecutor's actions were misconduct and, if so, this Court examines whether the misconduct had prejudicial effect. *Id.*

[¶10] During the cross-examination of Foster, the prosecutor asked Foster if any of the prior witnesses saw the goaltender with a stick. Foster's counsel objected and the objection was overruled. Foster argues it was improper for the prosecutor to ask questions that obligated him to compare his testimony to that of another, and to opine whether the other witnesses were lying. The State argues the questioning did not require Foster to opine on the accuracy and veracity of the other witnesses. Upon our review of the record we conclude the questions required Foster to comment on the credibility of other witnesses.

[¶11] The task of weighing evidence and assessing credibility is solely within the province of the jury. *State v. Lemons*, 2004 ND 44, ¶ 16, 675 N.W.2d 148 (citing *State v. Bell*, 2002 ND 130, ¶ 25, 649 N.W.2d 243). Other state courts have recognized it is generally improper to ask one witness to comment on the credibility of another witness or express an opinion regarding whether another witness was telling the truth. *See State v. Morton*, 701 N.W.2d 225, 233 (Minn. 2005) (improper to cross-examine defendant with "were they lying" questions where it could lead jury to believe they must think witnesses were lying in

order to acquit defendant); *State v. Isom*, 306 Or. 587, 590-92, 761 P.2d 524 (1988) (on cross-examination, prosecutor suggested that contradictory witness was either mistaken or lying); *People v. Zambrano*, 124 Cal. App. 4th 228, 232 (2004) (A prosecutor's "were they lying" questions to the defendant were improper "because they sought defendant's inadmissible lay opinion about the officers' veracity, invaded the province of the jury to determine the credibility question, and were irrelevant to any issue in the case."). Federal courts have also recognized a prosecutor engages in misconduct by requiring a defendant to call a State's witness a liar. *See United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. Cal. 2002); *United States v. Sanchez*, 176 F.3d 1214, 1219 (9th Cir. 1999). *See also United States v. Sullivan*, 85 F.3d 743, 749 (1st Cir. 1996); *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995) ("It is . . . error for a prosecutor to induce a witness to testify that another witness, and in particular a government agent, has lied on the stand."); *United States v. Richter*, 826 F.2d 206, 208 (2nd Cir. 1987) ("Prosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper."). We conclude the questioning requiring Foster to give his opinion regarding the credibility of earlier witnesses was improper.

### III

[¶12] Foster also argues the prosecutor's expression of her personal belief regarding the evidence, and in particular his claim of self-defense, during the closing arguments was improper and is prosecutorial misconduct that deprived him of his right to a fair trial. This Court has identified three concerns arising from a prosecutor's incorporation of their personal beliefs into closing argument. *State v. Schimmel*, 409 N.W.2d 335, 342-43 (N.D. 1987). First, a State's attorney may act as an unsworn witness for the prosecution who is not subject to cross-examination and may be perceived as an expert witness testifying about scientific evidence. *Id*. Second, a "State's attorney may convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant." *Id*. "Our final concern is that the prosecutor's opinion carries with it the 'imprimatur of the Government.'" *Id*.

4

[¶13] Foster challenges the prosecutor expressing her personal belief that there was no question Foster had a gun and it was therefore unnecessary to even discuss whether Foster had a gun. Although couched in terms of the prosecutor's personal belief, whether Foster had a gun was not in dispute. Even Foster testified he displayed a handgun to the other soccer players. The prosecutor's expression of her belief regarding a fact not in dispute does not raise any of the concerns we identified in *Schimmel*, the prosecutor was not acting as an unsworn witness for the prosecution who was not subject to cross-examination nor could have the prosecutor been perceived as an expert witness testifying about scientific evidence. Second, the prosecutor did not convey the impression that evidence not presented to the jury, but known to the prosecutor, supported the charges against Foster. Third, because Foster testified to displaying the gun, the prosecutor's expression of personal belief did not carry with it the "imprimatur of the Government" with regard to an issue of fact.

[¶14] Foster also challenges the following statement made by the prosecutor as an improper expression of personal belief: "Let's jump first to the part where I don't believe the story of self-defense. There isn't a witness that was called that saw --." Foster argues the statement undercut his claim of self-defense, which required the jury to decide the question of fact as to whether the other soccer players pursued Foster to his car. The statement raises one of the concerns this Court identified in *Schimmel*. The prosecutor directly stated her personal belief about Foster's claim of self-defense and did so in her role as the prosecuting attorney. Foster's claim of self-defense was effectively the only issue of fact in contention with regard to the terrorizing charge. Under the circumstances of this case the comment carried the "imprimatur of the Government" with regard to an issue of fact.

[¶15] Finally, Foster challenges the prosecutor's use of the following statements criticizing his trial attorney's closing argument: "[the] defense is trying to, what I call, get you in the weeds" and "Put up smoke in mirrors." The prosecutor statements responded to Foster's trial attorney's closing arguments on the burden of proof. The prosecutor's statements were within

5

the bounds of fair and reasonable criticism. The statements do not raise any of the concerns we identified in *Schimmel.* 409 N.W.2d at 343.

[¶16] We have reviewed Foster's challenges to comments made by the prosecutor during closing argument. We conclude one of the comments was improper and supports his claim of prosecutorial misconduct.

IV

[¶17] Having concluded the questioning requiring Foster to give his opinion regarding the credibility of earlier witnesses was improper, and the prosecutor's statement of personal opinion regarding Foster's claim of self-defense was improper, we must determine whether the misconduct had prejudicial effect. *City of Bismarck v. Sokalski,* 2016 ND 94, ¶ 10, 879 N.W.2d 88 (citing *State v. Jasmann,* 2015 ND 101, ¶ 5, 862 N.W.2d 809). "[P]rosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* "However, we have also recognized that not every assertion of prosecutorial misconduct, followed by an argument the conduct denied the defendant his constitutional right to a fair trial, automatically rises to an error of constitutional dimension." *State v. Duncan,* 2011 ND 85, ¶ 12, 796 N.W.2d 672 (citing *State v. Kruckenberg,* 2008 ND 212, ¶ 20, 758 N.W.2d 427). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Duncan,* at ¶ 12. "To determine whether a prosecutor's misconduct rises to a level of due process violation, we decide if the conduct, in the context of the entire trial, was sufficiently prejudicial to violate a defendant's due process rights." *Id.* If conduct was sufficiently prejudicial, we then consider the probable effect the prosecutor's improper comment would have on the jury's ability to fairly judge the evidence. *Sokalski,* at ¶ 10. In reviewing claims involving improper prosecutorial comments, we have noted the following: "'Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.'" *State v. Pena Garcia,* 2012 ND 11, ¶ 6, 812 N.W.2d 328 (quoting *State v. Paulson,* 477 N.W.2d 208, 210 (N.D. 1991)).

[¶18] Foster testified the goaltender had a stick and he only acquired a stick to make it a fair fight. Foster testified he threw his stick down before running to his car and that he was pursued by other players. We have concluded questions posed to Foster during his cross-examination improperly required him to provide an opinion on the veracity and credibility of earlier witnesses who had provided testimony contradictory to Foster's testimony. The prosecutor subsequently improperly stated her personal opinion regarding the same subject matter during the closing arguments.

[¶19] After reviewing the evidence submitted at trial, we conclude the misconduct had prejudicial effect. Although Foster admitted to going to his vehicle, obtaining a gun, and displaying the gun to other soccer players, he asserted he did so in self-defense. His defense was he had been chased by other soccer players to his car. His testimony was in direct conflict with the State's witnesses who testified they did not see Foster being chased. Witness credibility was paramount in this case. Three times Foster was asked whether he thought the other witnesses were lying. Foster and the State's witnesses gave different stories, and the jury found Foster guilty of Terrorizing likely by believing the State's witnesses' version of the facts and rejecting Foster's assertion of self-defense. The prosecutor subsequently told the jury she did not believe Foster's claim of self-defense. We also note the State was clearly aware of the role credibility played, and argued to the jury during closing arguments the State did not call to testify just one or two witnesses, but five. Under these circumstances we conclude the misconduct had prejudicial effect with regard to the charge of terrorizing.

[¶20] The charge of carrying a concealed weapon can be established from facts at a physical location separate from the facts necessary to convict Foster of the terrorizing charge. The jury could have found the facts necessary to convict Foster of the carrying a concealed weapon offense all occurred after Foster had displayed the weapon and left the park. Foster's testimony did not conflict with the State's only witness to those facts, the law enforcement officer. The witnesses who Foster was improperly asked to provide an opinion of their veracity and credibility did not provide testimony relevant to the carrying a concealed weapon charge. We conclude the improper questioning was not

7

prejudicial with regard to the charge of carrying a concealed weapon and did not deny Foster of a fair trial on that charge.

V

[¶21] Foster challenges the sufficiency of the evidence offered by the State to support the convictions. On appeal, Foster, "bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict." *State v. Eggleston*, 2020 ND 68, ¶ 9 (quoting *State v. Rai*, 2019 ND 71, ¶ 13, 924 N.W.2d 410). In determining whether the burden is met, "this Court 'view[s] the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the verdict to decide whether a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Wangstad*, 2018 ND 217, ¶ 23, 917 N.W.2d 515). "This Court does not reweigh conflicting evidence or judge the credibility of witnesses." *Rai,* at ¶ 13.

[¶22] Foster challenges the sufficiency of the evidence to the charge of carrying a concealed weapon. The jury instructions required the jury to find the following essential elements to convict Foster of carrying a concealed weapon: That on or about the 28th day of July 2018, in Burleigh County, North Dakota, the defendant, Akeem Foster, carried a concealed firearm or dangerous weapon and was not licensed to carry a concealed weapon, a law enforcement officer, or exempt under North Dakota Law.

[¶23] Concealed weapons are defined under N.D.C.C. § 62.1-04-01. A weapon is concealed "if it is transported in a vehicle under the individual's control or direction and available to the individual, including beneath the seat or in a glove compartment." N.D.C.C. § 62.1-04-01. A weapon is not concealed however, if it is unloaded while carried in a vehicle. N.D.C.C. § 62.1-04-01(5).

[¶24] Section 62.1-04-02, N.D.C.C., identifies individuals that are exempt from being licensed to carry a concealed weapon under North Dakota law and states in part: "An individual . . . who has possessed for at least one year a valid driver's license or nondriver identification card issued by the department of

8

transportation may carry a firearm concealed under this chapter." N.D.C.C §
62.1-04-02(2).

[¶25] Evidence at trial supports the following facts. After leaving the park
Foster drove some distance and parked the vehicle he was driving. While he
was parked, the arresting law enforcement officer pulled up behind him. The
arresting officer located a loaded handgun in the glove compartment of Foster's
vehicle. Although Foster had lived in North Dakota for more than a year at
the time of the incident, Foster did not possess a North Dakota nondriver
identification for a year nor was he otherwise exempt from the requirement
to possess a concealed weapons permit. Foster argues the evidence was
insufficient to support the conviction because there was no direct evidence that
he understood he could not legally carry a concealed weapon.

[¶26] "Whether an offense is punishable without proof of intent, knowledge,
willfulness, or negligence is a question of legislative intent to be determined by
the language of the statute in connection with its manifest purpose and
design." *State v. Haugen*, 2007 ND 195, ¶ 7, 742 N.W.2d 796 (citing *State v.
Nygaard*, 447 N.W.2d 267, 269-70 (N.D. 1989)). "The interpretation of a
statute is a question of law, fully reviewable on appeal." *Id.* (citing *State v.
Jackson*, 2005 ND 137, ¶ 8, 701 N.W.2d 887). Section 62.1-04-02(1), N.D.C.C.,
states, "An individual, other than a law enforcement officer, may not carry a
firearm or dangerous weapon concealed unless the individual is licensed to do
so or exempted under this chapter." When a statute outside Title 12.1 does not
specify a culpability requirement the offense is strict liability. *State v. Holte*,
2001 ND 133, ¶ 10, 631 N.W.2d 595. We interpret N.D.C.C. § 62.1-04-02(1) to
be a strict liability offense, punishable without regard to intent, knowledge,
willfulness, or negligence. The State was not required to prove Foster had
actual knowledge it was illegal for him to drive with a loaded gun in the glove
compartment of the vehicle. Reviewing the evidence in the light most favorable
to the verdict, there was sufficient evidence to sustain the verdict.

[¶27] Foster challenges the sufficiency of the evidence to the charge of
terrorizing. His argument is limited to the following sentence in his appellate
brief: "Foster was improperly convicted on the terrorizing charge when his

actions were done in self-defense." We interpret this argument as a concession sufficient evidence supporting the elements of the underlying charge was provided to the jury and his argument is limited to his claim of self-defense. We conclude the testimony of several witnesses indicating Foster was not pursued to his vehicle was sufficient to sustain the verdict on the terrorizing charge even when considering Foster's claim of self-defense. As noted above, in light of the improper questioning of Foster and improper statements during closing arguments, Foster's conviction with regard to the terrorizing charge is reversed.

## VI

[¶28] Foster was improperly asked to provide an opinion on the veracity and credibility of the State's witnesses. The improper questioning was prejudicial and denied Foster a fair trial on the terrorizing charge. There was sufficient evidence to find Foster guilty of Carrying a Concealed Weapon. The district court's judgment is affirmed with regard to the concealed weapon conviction and is reversed with regard to the terrorizing conviction.

[¶29] Jon J. Jensen, C.J.
  Gerald W. VandeWalle
  Daniel J. Crothers
  Jerod E. Tufte
  Lisa Fair McEvers